Ms. Vicki Tschinkel Secretary, Department of Environmental Regulation
QUESTION:
Do local governmental units, certain special districts, and the Department of Environmental Regulation (DER) have adequate constitutional and/or statutory authority to meet the requirements of Section 208 of the Federal Clean Water Act (33 U.S.C. ss. 1251et seq.)?
SUMMARY:
Counties, municipalities, and the Department of Environmental Regulation possess certain constitutional and statutory powers relating to the acquisition, construction, financing, operation, maintenance and management of sewage collection, disposal and treatment facilities and services. Neither Water Management Districts nor Soil and Water Conservation Districts possess any constitutional or statutory powers relative to sewage collection, disposal or treatment.
I understand that the Regional Administrator of the Environmental Protection Agency has requested that you obtain my opinion as to the legal authority of the aforementioned governmental units in order that those units might qualify for federal monies available pursuant to the Clean Water Act. While I will provide you with my opinion as to the constitutional and statutory authority possessed by these units of government, I must at the outset disclaim any ability to pass upon the question of whether the powers so possessed are adequate or sufficient to meet the requirements of the federal act. That is a question which only the federal agency charged by law with administering the federal program may decide. Consequently, this opinion will be limited to a discussion of whether counties, municipalities, water management districts, soil and water conservation districts, and DER have the constitutional and/or statutory power:
 (1) to manage sewage collection, disposal, and treatment systems and related facilities both within and without the jurisdictional limits of said governmental units;
 (2) either directly or by contract, to design and construct, operate and maintain both new and existing sewage collection, disposal, and treatment systems;
 (3) to accept and utilize grants or other funds from any source for sewage collection, disposal and treatment purposes;
 (4) to raise revenues, including the assessment of sewage treatment charges;
(5) to incur shortand long-term indebtedness;
 (6) to assure in the implementation of an areawide sewage treatment management plan that each participating community or public or private corporation or person pay its or his proportionate share of treatment costs;
 (7) to refuse to receive wastes from any municipality, subdivision thereof, public or private corporation, or person; and
(8) to accept for treatment industrial wastes.
COUNTIES
Before proceeding to a discussion of the general statutory powers of counties which are relevant to the instant inquiry, it seems appropriate to begin by describing the parameters of county power which are constitutionally imposed.
In accordance with the directive of s. 1(a), Art. VIII, State Const., the state has been divided into political subdivisions called counties. See ch. 7, F.S., for the boundary descriptions of the 67 counties. Counties may be abolished or changed by law. Section 1(a), Art. VIII, State Const. As subdivisions of the state, counties are subject to the legislative prerogative in the conduct of their affairs. See Weaver v. Heidtman, 245 So.2d 295 (1 D.C.A. Fla., 1971). Basically, there are two types of counties in Florida — charter counties and noncharter counties. Section 1, Art. VIII, State Const. But see s. 3, Art. VIII, State Const., with respect to consolidated county and municipal governments. See also
s. 6(e), Art. VIII, State Const., and AGO 081-7. Noncharter counties have only such powers of self-government as are provided by general or special law. Section 1(f), Art. VIII, s. 1(f), State Const. In this regard, the Legislature has granted noncharter counties broad powers to carry on county government. See s.125.01(1), F.S. (1980 Supp.), providing that `the legislative and governing body of a county shall have the power to carry on county government (and to) the extent not inconsistent with general or special law . . .' to exercise the general powers enumerated therein. See s. 125.01(1)(k), F.S. (1980 Supp.); see also ch. 153, F.S. Section 1(f), Art. VIII, State Const., provides that the governing bodies or noncharter counties may enact ordinances not inconsistent with general or special law. However, a noncharter county ordinance which conflicts with a validly enacted municipal ordinance is not effective within that municipality to the extent of such conflict. See AGO 073-477, stating that a county ordinance may be enforced throughout the county unless it is in conflict with a municipal ordinance.
Section 1(c), Art. VIII, State Const., provides that, at the option of the electors, a county may establish a charter form of government in the manner provided by general or special law. See
parts II and IV of ch. 125, F.S., for the general law provisions governing the establishment of a county charter. The governing body of a county operating under a charter form of government is vested with all powers of local self-government that are not inconsistent with general law or with a special law approved by the electors of that county. Section 1(g), Art. VIII, State Const. The county charter itself shall specify whether a conflicting municipal ordinance will control over a charter county ordinance.Id.
Section 3, Art. VIII, State Const., permits the government of a county and the government of one or more of the municipalities located within that county to be consolidated into a single governmental unit possessed of any and all powers of the county and several municipalities. Furthermore, Section 6(e), Art. VIII, continues in effect certain special provisions of the 1885 Constitution as those provisions relate to Jacksonville — Duval County, Key West — Monroe County, Dade County, and Hillsborough County.
It can be seen, then, that counties possess broad powers of self-government. Under the Constitution, a charter county may pass an ordinance on any subject relating to county government so long as it is not inconsistent with general law. Cf. Question 2 of AGO 081-7. Noncharter counties, pursuant to s. 125.01(1), F.S. (1980 Supp.), may exercise the general powers enumerated therein, including the provision for and regulation of waste and sewage collection and disposal (s. 125.01(1)(k)), and have all implied powers necessary or indicent to carrying out such enumerated powers (s. 125.01(3), F.S. (1980 Supp.)). Those powers which may be exercised by county governments, however, are ultimately derived from the state, and the jurisdiction of every county may be qualified by law. See Cross Key Waterways v. Askew,351 So.2d 1062 (1 D.C.A. Fla., 1977), affirmed, 372 So.2d 913 (Fla. 1979).
While counties do have broad general powers enabling them to conduct local government, you have requested me to discuss those specific statutory provisions which pertain to the exercise of those powers enumerated above. I will not attempt to differentiate between charter and noncharter counties as the former possess all the powers of the latter unless some provision of a specific county charter restricts the exercise of a particular power. See
s. 1(f), Art. VIII, State Const., providing that noncharter counties have such power of self-government as is provided bygeneral or special law; and see s. 1(g), Art. VIII, providing that charter counties possess all powers of self-government notinconsistent with general law or special law approved by thecounty's electors. Cf. City of Ormond Beach v. County of Volusia,383 So.2d 671, 673 (5 D.C.A. Fla., 1980); In re West Water Management District, 269 So.2d 405 (2 D.C.A. Fla., 1972).
THE AUTHORITY OF COUNTIES TO MANAGE SEWAGE COLLECTION, TREATMENT, AND DISPOSAL SYSTEMS AND RELATED FACILITIES BOTH WITHIN AND WITHOUT THE COUNTY:
The verb `to manage' is generally construed as meaning to direct, control or administer. See 26 Words and Phrases 351 (1953 ed.). With regard to waste treatment works and related facilities, counties are authorized generally to provide and regulate waste and sewage collection and disposal, and possess all implied powers necessary or incidental to carrying out such general powers. Sections 125.01(1)(k), (3), F.S. (1980 Supp.). In addition to this general grant of power, the County Water System and Sanitary Sewer Financing Law, part I of ch. 153, F.S., grants counties the alternative and supplemental authority to purchase or construct sewage disposal systems and to operate, manage and control those systems both within that county as well as within adjoining counties and, with the consent of the governing body of the affected municipality, within any municipality (ss. 153.03(1) and153.20, F.S.). See s. 153.02(5), F.S., for the definition of `sewage disposal system.' Furthermore, counties have the authority to create municipal service taxing or benefit units in the unincorporated areas of the county and to provide waste and sewage collection and disposal facilities in those areas. Section125.01(1)(q), F.S. (1980 Supp.). See Gallant v. Stephens,358 So.2d 536 (Fla. 1978), holding the creation of such municipal service taxing or benefit units to be constitutional. And see
State v. Sarasota County, 372 So.2d 1115 (Fla. 1979), describing municipal service taxing or benefit units as financing vehicles, not full-fledged political entities, and indicating that their purpose is merely to provide a mechanism by which such designated areas can pay for their own improvements. See s. 125.01(5), F.S. (1980 Supp.), providing that, with the approval of the affected municipality, a county may establish a special district including both incorporated and unincorporated areas of the county. In addition, s. 153.53(1), F.S., authorizes the board of county commissioners to establish one or more water and sewer districts in the unincorporated areas of the county and permits the district board to construct, operate and maintain water and sew9.03(1), F.S., authorizes the governing body of any county to acquire or construct and to own, operate and maintain a self-liquidating sewer system both within and without the boundaries of the county provided the consent of other affected governmental units is obtained.
The foregoing authorities permit counties both within and without their jurisdictional limits to provide and regulate waste and sewage collection and disposal, as well as to construct, operate and maintain the necessary facilities. Based on this authority and in the aforementioned context, it is my opinion that counties have the power to manage sewage collection, disposal and treatment works and related facilities within and without their territorial limits.
THE AUTHORITY OF COUNTIES, EITHER DIRECTLY OR BY CONTRACT, TO DESIGN AND CONSTRUCT, OPERATE AND MAINTAIN BOTH NEW AND EXISTING SEWAGE COLLECTION, DISPOSAL AND TREATMENT SYSTEMS:
Counties have the express authority to provide waste and sewage collection and disposal. Section 125.01(1)(k), F.S. (1980 Supp.).See also s. 125.01(1)(p), F.S. (1980 Supp.), providing that counties may enter into agreements with other governmental agencies both within and without the county for the joint performance, or performance by one for the other, of any of either agency's powers; s. 125.01(3)(a), F.S. (1980 Supp.), providing that the enumeration in ch. 125 of a particular county power shall be deemed to incorporate all implied powers necessary or incidental to carrying out such enumerated powers; and ch. 153, F.S. Furthermore, ss. 125.01(1)(q) and (2), F.S. (1980 Supp.), authorize the board of county commissioners to establish and govern municipal service taxing and benefit units in the unincorporated areas of the county and to provide within such units waste and sewage collection and disposal facilities and services from service charges, special assessments, or taxes imposed upon the benefited property.
In addition to the general county powers provided in ch. 125, F.S. (1980 Supp.), relating to the provision of sewage and waste collection and disposal, counties are authorized by the County Water System and Sanitary Sewer Financing Law to provide for the construction or reconstruction of sewage disposal systems. Sections 153.03, 153.04 and 153.05, F.S. As a precedent to such construction or reconstruction, the board of county commissioners is permitted to make or cause to be made surveys, investigations, studies, borings, maps, plans, drawings and estimates of costs and revenues of such proposed facilities. Section 153.04, F.S. See s.153.05, F.S., for the procedures for levying special assessments upon benefited property. Furthermore, counties are expressly granted the power to construct and improve, extend, enlarge or reconstruct sewage disposal systems and to operate, manage and control such systems within a county and any adjoining counties and within any municipality within any of such counties with the consent of the governing body of such affected municipality. Section 153.03(1), F.S.
The County Water and Sewer District Law, ss. 153.50-153.95, F.S., also permits the governing board of any county to establish water and sewer districts in the unincorporated areas of the county (s.153.53(1), F.S.), and the governing bodies of those districts (county commissioners acting for the districts) are authorized to construct, operate and maintain sewer systems for their respective districts. Section 153.62(3), F.S.
Finally, under the provisions of s. 159.03, F.S., the governing body of any county is empowered to acquire or construct, operate and maintain sewer systems either inside or outside, or partly inside and outside, the limits of the county. The consent of the affected governmental units must be obtained before any such system may be operated within their boundaries. See s. 159.03(1), F.S.; see also ss. 159.02(2), (4) and (14), F.S.
Based on the foregoing authorities, it is my opinion that counties have the power, either directly or by contract, to design, construct, operate and maintain either new or existing sewage collection, disposal and treatment facilities.
THE AUTHORITY OF COUNTIES TO ACCEPT AND UTILIZE GRANTS OR OTHER FUNDS FROM ANY SOURCE FOR SEWAGE COLLECTION, DISPOSAL AND TREATMENT PURPOSES:
Section 153.03(4), F.S., expressly authorizes the several counties to receive and accept federal grants for or in aid of the planning, purchasing, construction, reconstruction or financing of sewage treatment facilities. That same subsection permits counties to accept contributions from any source to be used for whatever purposes they may be made.
Should a county establish a sewer district in the unincorporated area of the county, s. 153.62(17), F.S., permits the district board to accept federal grants or loans for or in aid of the planning, purchasing, construction, reconstruction, or financing of a sewer system and further to accept aid or contributions from any source for whatever purposes they may be made.
Subsection (6) of s. 159.03, F.S., further authorizes the governing body of any county to receive and accept federal grants for or in aid of the planning, construction, reconstruction or financing of any sewer system acquired or constructed under the provisions of that chapter as well as to receive and accept aid or contributions from any source for such purposes.
Based on the foregoing authorities, it is my opinion that counties have adequate statutory authority to accept and utilize grants and other funds from any source for sewage collection, disposal and treatment purposes.
THE AUTHORITY OF COUNTIES TO RAISE REVENUES, INCLUDING THE ASSESSMENT OF SEWAGE OR WASTE TREATMENT CHARGES:
The State Constitution, in s. 9, Art. VII, directs the Legislature to provide by law the authorization for counties to levy ad valorem taxes and in addition permits the Legislature by general law to authorize counties to levy other taxes (such as license taxes) for county purposes. Pursuant to this direction, the Legislature has authorized the governing bodies of all counties to levy and collect ad valorem taxes for county purposes and for the provision of municipal services within any municipal service taxing or benefit unit set up under s. 125.01(1)(q), F.S. (1980 Supp.). Counties are also granted the express power to levy and collect special assessments for providing county or municipal services within any municipal service taxing unit and to issue bonds, revenue certificates and other obligations of indebtedness. Section 125.01(1)(r), F.S. (1980 Supp.); cf. Tucker v. Underdown,356 So.2d 251 (Fla. 1978); State v. Alachua County, 335 So.2d 554
(Fla. 1976); State v. Orange County, 281 So.2d 310 (Fla. 1973).
A county may also identify a particular area in the unincorporated portion of the county needing waste and sewage collection and disposal and provide those services from funds derived from service charges, special assessments or taxes levied within that area. Sections 125.01(1)(q), 125.01(5)(a) and (c) and125.01(6)(a), F.S. (1980 Supp.). See Gallant v. Stephens, supra, holding s. 125.01(1)(q) constitutional; Tucker v. Underdown,supra, holding ss. 125.01(1)(q) and 125.01(1)(r) constitutional.And see Charlotte County v. Fiske, 350 So.2d 578 (2 D.C.A. Fla., 1977), indicating the expansive reading courts have given to the term `special assessments.' A county may also, with the concurrence of one or more municipalities, establish special districts in part or all of the county including both incorporated and unincorporated areas and provide municipal service and facilities within that district from funds derived from service charges, special assessments, or taxes levied within that district. Section 125.01(5)(a), F.S. (1980 Supp.).
The County Water System and Sanitary Sewer Financing Law (part I of ch. 153, F.S.) authorizes the board of county commissioners of any county to fix and collect rates, fees, and other charges for sewage disposal services and facilities or sewer improvements or sanitary sewers. Section 153.03(3), F.S. Counties are also authorized to provide for the construction or reconstruction of sewage disposal systems and/or sanitary sewer facilities and to pay for those facilities through the levying of special assessments upon benefited property. Section 153.05(1), F.S.
The district board (the board of county commissioners acting for the district) of any county water and sewer district set up pursuant to s. 153.53, F.S., is empowered to construct, operate and maintain sewer systems for the collection, treatment, purification or disposal of sewage, and to issue bonds, revenue bonds, or assessment bonds and to fix and collect rates, fees and other charges for the use of the facilities and services provided. Section 153.62(3), F.S. The district board is also permitted to levy special ad valorem maintenance taxes to pay for the maintenance and operation and other corporate purposes of the district. Section 153.81, F.S.
Finally, subsections (2) and (3) of s. 159.03, F.S., authorize the governing body of any county to issue revenue bonds to pay the cost of a sewer system acquired or constructed as provided in that chapter and to fix and collect rates, fees, tolls, rentals and other charges for such services and facilities.
Based on the foregoing statutory and constitutional provisions, it is my opinion that counties have the authority to raise revenues, levy taxes, fix and collect service charges and collect special assessments for sewage and waste treatment services and facilities.
THE AUTHORITY OF COUNTIES TO INCUR SHORT- AND LONG-TERM INDEBTEDNESS:
Counties have ample authority to issue various types of bonds for sewage and waste treatment purposes and to borrow money therefor. Section 12, Art. VII, State Const., permits counties to issue bonds, certificates of indebtedness, or any form of tax anticipation certificates, payable from ad valorem taxes and maturing more than 12 months from the date of issuance, to finance or refinance any capital project authorized by law. See Gallant v. Stephens, supra; Tucker v. Underdown, supra. Such bonds may only be issued, however, if the issuance has been approved by a vote of the electors. This constitutional restriction applies only to bonds and other certificates of indebtedness, the proceeds of which are payable from ad valorem taxes. Thus, revenue bonds are not subject to voter approval. See, e.g., Penn v. Pensacola-Escambia Governmental Center Authority, 311 So.2d 97
(Fla. 1975); Orange County Civic Facilities Authority v. State,286 So.2d 193 (Fla. 1973); State v. Orange County, supra. Neither does the Constitution operate to preclude the incurrence of short-term debt payable from ad valorem taxes when the repayment schedule is 12 months or less. Section 125.01(1)(r), F.S. (1980 Supp.), expressly authorizes counties to borrow money and to issue bonds, revenue certificates, and other obligations of indebtedness for any county purpose and for the providing of municipal services within any municipal service taxing unit.
The governing body of every county is expressly authorized by the terms of the County Water System and Sanitary Sewer Financing Law (part I of ch. 153, F.S.) to issue water revenue bonds, sewer revenue bonds, or general obligation bonds for sewage disposal systems and sanitary sewers and extensions and improvements thereto. Sections 153.03(2), 153.06(1), 153.07(1), 153.08(1),153.09(1), and 153.091, F.S. Counties may also issue sewer revenue refunding bonds. Section 153.17, F.S.
The district board of any county water and sewer district established pursuant to s. 153.53, F.S., is authorized to issue revenue bonds, general obligation bonds, and assessment bonds. Sections 153.62, 153.63, and 153.68, F.S. The district board may also issue certificates of indebtedness based on assessments against benefited property for assessable improvements. Section153.74, F.S.
Finally, the governing body of any county is authorized by the terms of s. 159.03(2), F.S., to issue revenue bonds to pay the cost of a sewer system acquired or constructed as provided in that chapter. See also s. 159.05, F.S.
Based on the foregoing authorities, I am of the opinion that counties have the authority to incur both shortand long-term indebtedness in relation to the acquisition and/or construction of sewage collection, disposal and treatment facilities.
THE AUTHORITY OF COUNTIES TO ASSURE IN THE IMPLEMENTATION OF AN AREAWIDE SEWAGE TREATMENT MANAGEMENT PLAN THAT EACH PARTICIPATING COMMUNITY OR PUBLIC OR PRIVATE CORPORATION OR PERSON PAY ITS OR HIS PROPORTIONATE SHARE OF TREATMENT COSTS:
A county's authority to assure that participating communities in an areawide operation pay their proportionate share of areawide waste treatment costs is both expressed and implied.
Under s. 125.0101(2), F.S. (1980 Supp.), counties are given the power to contract with municipalities and special districts for waste and sewage collection and disposal, facilities and services to be funded as agreed upon between the county and the municipalities or special districts. The powers granted by that section are deemed cumulative. Section 125.01(1)(p), F.S., empowers counties to enter into agreements with other governmental agencies within or without the boundaries of the county for joint performance, or performance by one unit on behalf of the other, of any of either agency's authorized functions. The parties to the contract have the power, therefore, to agree to pay their own share of the treatment costs according to some fair and equitable method of allocation.
Counties are also permitted by s. 163.01(4), F.S., to enter into interlocal agreements with municipalities and special districts for the joint or separate exercise of their common powers, including sewage disposal and waste treatment. The interlocal agreement, which is enforceable as a contract, may provide for the manner of payment, the method or formula for equitable allocating or providing for the capital and operating costs on the basis of the amount of services or benefits received. Section 163.01(5)(p) specifically authorizes provision to be made in an interlocal agreement for the adjudication of disputes or disagreements, the effects of failure of participating parties to pay their share of the costs and expenses, and the rights of other participants in such cases. Counties may not, pursuant to an interlocal agreement, delegate the constitutional or statutory duties of their officers. Section 163.01(14), F.S.
Counties are also authorized to construct, operate and maintain a sewage disposal system in the unincorporated area and adjoining counties and, with the consent of the governing body, in any municipality (s. 153.03(1), F.S.), to require owners of abutting property to connect to the system (s. 153.12(1), F.S.), and to set fees and charges which must be sufficient to pay the cost of maintaining, repairing and operating the system (s. 153.11(1)(b), F.S.), and to make reasonable charges for installation or connection to the system (s. 153.03(3), F.S.). Counties are permitted by s. 153.12(2)(b), F.S., to discontinue a recipient's sewage services and to prevent him from using the system if he has not paid his fees.
In addition, counties are permitted to establish water and sewer districts in the unincorporated areas (s. 153.53, F.S.); the district board is empowered to require the use of its facilities (s. 153.62(13), F.S.), and to fix and collect rates, fees and other charges (s. 153.62(6), F.S.). Those fees and charges are required to be just and equitable and uniform for all users of the same class. Section 153.64(2), F.S. Any unpaid fees constitute a lien on the property of the owner for which such services and facilities were provided. Section 153.67, F.S.
From the foregoing authorities, I conclude that counties have the authority to provide assurances that any individual, corporate or governmental unit user of a county sewage disposal facility or service pay its proportionate share of the sewage treatment costs of the county's sewage disposal system.
THE AUTHORITY OF COUNTIES TO REFUSE TO RECEIVE WASTES FROM ANY MUNICIPALITY, SUBDIVISION THEREOF, PUBLIC OR PRIVATE CORPORATION OR PERSON:
In order for a county to be operating an areawide waste treatment facility which services municipalities and subdivisions of municipalities, it must be operating pursuant to either s.125.01(1)(p), F.S. (1980 Supp.) (which authorizes the board of county commissioners to agree with another governmental agency within or without the boundaries of the county for the joint performance, or the performance by one unit on behalf of another, of any of either agency's authorized functions); or s.125.01(5)(a), F.S. (1980 Supp.) (which permits a county, with the concurrence of a municipality, to set up a special district in both the incorporated and unincorporated areas of the county and to provide municipal services in that district); or s. 125.0101, F.S., (1980 Supp.) (which permits counties, municipalities and special districts to enter into service contracts for, among other things, the collection and disposal of waste and sewage); or s.153.03(1), F.S. (which permits counties to purchase or construct and to operate, maintain and control sewage disposal systems within an individual county and adjoining counties as well as the municipalities therein); or s. 153.62(11), F.S. (which permits counties to contract with municipalities or other private or public corporations or persons to provide or receive sewage disposal, collection or treatment); or s. 163.01, F.S. (which permits local governmental units to enter into interlocal agreements for the joint performance of shared powers). In each of these cases, the underlying agreement may establish specified conditions for the continuance or discontinuance of use by any user or participant of the facilities or services being contracted for, including provision for terminating service to any premises of any user for failure to comply with any agreed upon conditions. In addition, if continued use of the county's facilities would constitute a health or safety hazard to other users of the system, a county's general police powers should be sufficient to enable it to take appropriate action against the offending participant.
Based upon the foregoing provisions, I conclude that counties may make provision for and refuse to receive wastes from any individual, corporate or governmental entity using or participating in a county-operated sewage collection, disposal or treatment facility or services for failure of such individual, corporate or governmental entity to comply with the terms of an underlying agreement to provide and operate such facilities and services.
THE AUTHORITY OF COUNTIES TO ACCEPT FOR TREATMENT INDUSTRIAL WASTES:
Section 153.53, F.S., grants counties the authority to establish sewer and water districts in the unincorporated areas of the county. The district board is expressly empowered to construct, install, operate and maintain a sewer system. Section 153.62(3), F.S. `Sewer system' is defined in s. 153.52(4), F.S., as including any plant, system or facility used in connection with the collection, treatment, purification or disposal of sewage of any nature or originating from any source including industrial wastes. In addition, the district board is empowered to require the use of its facilities whenever accessible (s. 153.62(13), F.S.), and to prescribe methods of pretreatment of industrial wastes where those wastes are not amenable to treatment with domestic wastes before accepting such wastes for treatment (s. 153.62(12) F.S.). Finally, the district board may refuse to accept for treatment industrial wastes where the prescribed method of pretreatment is not complied with. Id.
In addition, counties are expressly authorized by s. 153.03(1), F.S., to purchase or construct, and to operate, manage and control sewage disposal systems both within the unincorporated as well as incorporated areas of the county and any adjoining counties. With respect to such systems, the county commission may charge industrial or manufacturing plants an additional charge where the character of their sewage places an unreasonable burden upon the county's system or, alternatively, may require pretreatment of those wastes. Section 153.11(1)(e), F.S. From this, the implication is clear that counties may receive and treat such industrial wastes.
Therefore, I conclude that counties are authorized by law to accept and treat industrial wastes.
MUNICIPALITIES
Prior to the enactment of the 1968 revised State Constitution, Florida municipalities had only those powers granted to them by general or special law. The revised Constitution, however, provides that municipalities `shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law.' Section 2(b), Art. VIII, State Const. The Florida Supreme Court has recognized that this constitutional section `expressly grants to every municipality in this state authority to conduct municipal government, perform municipal functions, and render municipal services.' State v. City of Sunrise, 354 So.2d 1206, 1209 (Fla. 1978). The only limitation on a municipality's constitutional home rule power is that it must be exercised for a valid `municipal purpose.' Id. And it has been said that `. . . municipalities are not dependent upon the Legislature for further authorization. Legislative statutes arerelevant only to determine limitations of authority.' (Emphasis supplied.) City of Sunrise, supra, at 1209. Cf. City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc.,322 So.2d 571 (2 D.C.A. Fla., 1975), affirmed, 332 So.2d 610 (Fla. 1976); Cooksey v. Utilities Commission, 261, So.2d 129 (Fla. 1972); Tweed v. City of Cape Canaveral, 373 So.2d 408 (4 D.C.A. Fla., 1979).
The Legislature has recognized that municipalities have home rule powers. See s. 166.021(1), F.S., providing that `. . . municipalities shall have the governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions, and render municipal services, and may exercise any power for municipal purposes, except when expressly prohibited by law;' and s. 166.021(4) stating that the provisions of s. 166.021 shall be interpreted as to secure for municipalities the broad exercise of home rule powers granted by the Constitution and explicating the legislative intent to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the Constitution, general or special law, or county charter, and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those expressly prohibited. See also s. 166.042, F.S., and ch. 184, f,.S. 1971, which municipalities may continue to exercise the power of at their own discretion subject only to the terms and conditions which they choose to prescribe.
There are, of course, certain constitutional and statutory limitations on the exercise of municipal home rule powers. Section 2(c) of Art. VIII, State Const., provides that a municipality has no inherent right to annex unincorporated property, merge with another municipality or exercise any power outside its limits. Such powers may only be exercised as and in the manner provided by law. See, e.g., ch. 171, F.S., the Municipal Annexation or Contraction Act. Neither may municipalities exercise any power which is expressly prohibited by the Constitution or which has been expressly preempted to state or county government by the Constitution or general law. Sections 166.021(3)(b) and (c), F.S. In addition, a county may preempt to itself the exercise of certain powers through the adoption of a county charter. Section166.021(3)(d), F.S.
Since municipalities do have such broad and expansive home rule powers, it should be possible to rely only on those powers to conclude that municipalities may do all those things required by the Federal Clean Water Act unless an express constitutional or statutory provision prohibits the exercise of a particular power. However, since there also exists ample statutory authority for the exercise of those specific powers, you have asked that I comment on that legislation. I must begin by pointing out that, when the Legislature adopted the Municipal Home Rule Powers Act (part I of ch. 166, F.S.), it repealed at the same time many statutes which had up to that time served as the statutory authority for the exercise of many municipal powers. The repeal of those statutes was not meant to imply that municipalities no longer possessed those powers, however, but was merely a recognition by the Legislature that that municipalities derived their powers from the Constitution.
See s. 166.042, F.S. Consequently, you will notice that I have cited many statutory sections from the 1971 Florida Statutes (F.S. 1971). This is because, when the Legislature repealed those chapters, it expressly recognized that municipalities may `. . . continue to exercise all powers heretofore conferred on municipalities by the chapters enumerated above (i.e., those which were repealed), but shall hereafter exercise those powers at their own discretion, subject only to the terms and conditions which they choose to prescribe.' Section 166.042(1), F.S.
THE AUTHORITY OF MUNICIPALITIES TO MANAGE SEWAGE COLLECTION, DISPOSAL AND TREATMENT SYSTEMS AND RELATED FACILITIES BOTH WITHIN AND WITHOUT THE MUNICIPALITIES' JURISDICTIONAL BOUNDARIES:
As discussed above, municipalities have both constitutional and statutory power to conduct municipal government and render municipal services. Section 2(b), Art. VIII, State Const.; ss.166.021(1) and (4), F.S. Such services clearly include the provision of sewage collection, disposal and treatment and facilities related thereto. See Cooksey v. Utilities Commission,supra, (the power to provide a particular municipal service includes the implied power to construct, maintain and operate the necessary facilities). Furthermore, express statutory authority to construct, maintain and operate a sewage disposal system within or without, or partly within and partly without, the corporate limits of a municipality is found in s. 184.03(1), F.S. 1971. And see s. 184.03(9), F.S. 1971, authorizing municipalities to enter into contracts with other governmental or private entities providing for or relating to the treatment and disposal of sewage; s.180.02(2), F.S., authorizing municipalities to extend and execute its corporate powers outside of its corporate limits; s.180.06(4), F.S., authorizing municipalities to provide for the collection and disposal of sewage and other liquid wastes; and s.180.19, F.S., permitting other municipalities and private owners to connect with and use a municipal utility. Section 184.03(6), F.S. 1971, also grants municipalities the power to exercise jurisdiction, control and supervision over any sewage disposal system or sanitary sewer owned, operated or maintained by the municipality and to make and enforce rules and regulations for the maintenance and operation thereof. Finally, s. 159.03(1), F.S., authorizes the governing body of any municipality to acquire or construct and to own, operate and maintain a self-liquidating sewage disposal system or sanitary sewer system either within or, with the consent of other governmental units involved, without the municipal boundaries.
Based on the foregoing constitutional and statutory authorities, I am of the opinion that municipalities have the authority to manage sewage collection, disposal and treatment facilities within and without their corporate limits.
THE AUTHORITY OF MUNICIPALITIES, EITHER DIRECTLY OR BY CONTRACT, TO DESIGN AND CONSTRUCT, OPERATE AND MAINTAIN NEW AND EXISTING SEWAGE COLLECTION, DISPOSAL AND TREATMENT WORKS:
Ample statutory authority exists to permit municipalities to carry out these functions themselves or to enter into contracts for the performance by others of these functions. Municipalities are empowered to construct drains and sewers (s. 167.01, F.S. 1971), sewage disposal systems and sanitary sewers (ss. 180.04,180.06(4), 180.17, F.S.; s. 184.03(1), F.S. 1971), and to enter into such contracts and employ such personnel and exercise such control over sewage disposal systems as may be necessary or incidental to the performance of the foregoing duties (ss. 184.03(5), (6) and (9), F.S. 1971). Furthermore, the city council of each municipality may require preliminary reports prior to either ordering the construction of a sewage disposal system or proceeding with construction itself. Sections 184.04(1) and (2), F.S. 1971.
Sections 180.06(4) and (6), F.S., permit municipalities to provide for the collection and disposal of sewage and other liquid wastes and to construct such facilities, lines and works as may be necessary for those purposes. In addition, s. 159.03(1), F.S., permits the governing body of any municipality to acquire or construct, operate and maintain sewer systems either inside or, with the consent of other affected governmental units, outside the municipal borders.
Section 180.24 authorizes municipalities to contract for the construction of any municipal public work mentioned in ch. 180 including sewage collection and disposal facilities. Section170.01, F.S., authorizes municipalities to order the construction or reconstruction of sanitary sewers and other related facilities. Section 166.021(1), F.S., grants municipalities the right to render municipal services, and in Cooksey v. Utilities Commission,supra, the Florida Supreme Court held that the power granted by s. 2(b), Art. VIII, State Const., to provide a municipal service includes the power to construct, maintain and operate the necessary facilities.
Based on the foregoing authorities, it is my opinion that municipalities have the authority to design and construct, operate and maintain new and existing sewage collection, disposal and treatment works or to enter into contracts for the provision of such facilities and services.
THE AUTHORITY OF MUNICIPALITIES TO ACCEPT AND UTILIZE GRANTS AND OTHER FUNDS FOR SEWAGE COLLECTION, DISPOSAL AND TREATMENT PURPOSES:
Under the provisions of s. 184.03(10), F.S. 1971, municipalities are expressly authorized to receive and accept federal grants for or in aid of the planning, construction, reconstruction, or financing of any sewage disposal system or sanitary sewers and are further permitted to receive and accept aid or contributions from any source for whatever purposes such aid or contributions might be made.
Subsection (6) of s. 159.03, F.S., further authorizes the governing body of any municipality to receive and accept federal grants for or in aid of the planning, construction, reconstruction or financing of any sewer system acquired or constructed under the provisions of that chapter as well as to receive and accept aid or contributions from any source for such purposes. Such authority is adequate, in my opinion, to permit municipalities to accept and utilize grants and other funds for sewage collection, disposal and treatment purposes.
THE AUTHORITY OF MUNICIPALITIES TO RAISE REVENUES, INCLUDING THE ASSESSMENT OF SEWAGE TREATMENT CHARGES:
Municipalities derive their taxing power from ss. 1(a), 9(a), Art. VII, State Const., as well as from various statutory provisions such as ss. 166.201, 166.211, 166.231 and 166.232, F.S., or other general laws such as ch. 205, F.S., and may raise revenues as well as prescribe user charges or fees by ordinance. Section 166.201, F.S. They may borrow money and issue improvement bonds payable from the proceeds of special assessments for assessable projects (s. 166.101(5), F.S.) to finance the undertaking of any capital or other project (s. 166.111, F.S.). See also ss. 184.03, 184.04, F.S. 1971. They may provide for the construction of sanitary sewers and sewer improvements and for the levy of special assessments upon benefited property. Section 184.05, F.S. 1971.See also s. 170.01, F.S. They are also permitted by s. 180.13(2), F.S., to establish just and equitable rates and charges to be paid by each person, firm or corporation which uses municipal utilities. Pursuant to s. 180.191, F.S., municipalities may charge consumers outside their corporate limits the same rates or fees as charged consumers inside their limits and, in addition, charge a surcharge for services to consumers outside their boundaries.
In addition, municipalities pursuant to s. 166.042, F.S., may continue to exercise the power granted by ss. 184.03(3) and 184.07, F.S. 1971, to fix and collect rates, fees and other charges for sewage disposal services and facilities and to provide for the levying of special assessments upon benefited property as provided in s. 184.05, F.S. 1971. And, as the Florida Supreme Court said in the case of Cooksey v. Utilities Commission, supra, the fixing of fair and reasonable rates for utility services is an incident of the power granted to municipalities by the Constitution and statutes to provide and maintain those services.
Finally, subsections (2) and (3) of s. 159.03, F.S., permit the governing body of any municipality to issue revenue bonds to pay the cost of a sewer system acquired or constructed by the municipality under the provisions of ch. 159 and to fix and collect rates, fees, tolls, rentals and other charges for such services and facilities.
Based on the foregoing constitutional and statutory authority it is my opinion that municipalities have authority to raise revenues by taxation as well as by levying special assessments and fixing and collecting user fees and charges for sewage collection, disposal and treatment projects and services.
THE AUTHORITY OF MUNICIPALITIES TO INCUR SHORT- AND LONG-TERM INDEBTEDNESS:
Municipalities possess the same constitutional power to issue bonds, certificates of indebtedness and any form of tax anticipation certificates payable from ad valorem taxes and maturing more than 12 months after issuance as counties do. See s. 12, Art. VII, State Const. Such long-term obligations may only be issued to finance capital projects authorized by law and approved by a majority of the municipal electors. Short-term debts payable from ad valorem taxes maturing in less than 12 months and debts payable from sources other than ad valorem taxes, regardless of the length of the term, are not subject to voter approval.
Pursuant to s. 166.042(1), F.S., municipalities continue to possess the power granted by former s. 184.03(2), F.S. 1971, to issue either revenue bonds or general obligation bonds to pay for the construction or reconstruction of sewage disposal systems. Seealso ss. 169.01 and 169.02, F.S. 1971. The general laws also authorize municipalities to borrow money, contract loans, and issue bonds to finance any capital or other project permitted by the Constitution. Section 166.111, F.S. Improvement bonds to be paid off by special assessments may be issued for such things as sanitary sewers, storm sewers and drains. Section 170.11, F.S. The term `bond' includes `improvement bond' payable from the proceeds of special assessments levied for an assessable project. Sections166.101(1) and (5), F.S. Municipalities also have the power to issue mortgage revenue certificates or debentures which may be secured by a lien on the property of a public utility. Section180.08, F.S. See also s. 166.101(1), F.S., which defines `bond' to include debentures, notes, certificates of indebtedness, mortgage certificates or other obligations of indebtedness of any type or character.
Finally, subsections (2) and (3) of s. 159.03, F.S., authorize the governing body of any municipality to issue revenue bonds to pay the cost of a sewer system acquired or constructed as provided in that chapter. See also ss. 159.04, 159.05, 159.08, and 159.13, F.S.
Based on the foregoing authorities, I am of the opinion that municipalities have the authority to incur shortand long-term indebtedness, subject to constitutional limitations, either through the issuance of various kinds of bonds or by other types of borrowing.
THE AUTHORITY OF MUNICIPALITIES TO ASSURE IN THE IMPLEMENTATION OF AN AREAWIDE SEWAGE TREATMENT PLAN THAT EACH PARTICIPATING COMMUNITY OR PUBLIC OR PRIVATE CORPORATION OR PERSON PAY ITS OR HIS PROPORTIONATE SHARE OF TREATMENT COSTS:
Municipalities have no constitutional right to exercise their powers outside their own boundaries. Section 2(c), Art. VIII, State Const. The state Legislature is given the power to authorize such exercise of extra-territorial powers, however. Id. In this regard, s. 180.02, F.S., grants municipalities the power to extend their sewage systems constructed and operated under ch. 180 into not more than 5 miles of the unincorporated area surrounding the municipality and to prescribe regulations requiring all persons and corporations within such extended area to connect, when available, with the municipal sewage system. Section 184.03, F.S. 1971, authorizes municipalities to construct, maintain and operate a sewage disposal system either within or without, or partly within and without, the corporate limits and to fix and collect fees and charges for such services and facilities furnished by any such sewage disposal system or sanitary sewers and to make connection charges therefor. And see ss. 184.03(5), (6) and (9); 184.09 and 184.10, especially 184.10(2)(c), F.S. 1971. See also
ss. 159.17 and 159.18, F.S.
Section 180.13(2), F.S., permits the city council to establish just and equitable rates and charges to be paid for the use of its system by each person or corporation whose premises are served thereby. That subsection also authorizes municipalities to institute suit for the payment of rates and charges which are overdue and to discontinue service until the delinquent charges and expense for reconnection are paid. Municipalities with existing public works may permit other municipalities and the owners of lands outside their corporate limits or within the limits of another municipality to connect with or use such systems or other works upon such terms and conditions as may be agreed. Section 180.19, F.S. A municipality may, therefore, require another participating municipality or its inhabitants, or the owners of lands outside its corporate limits, to pay its or their fair share of treatment costs.
Section 125.0101, F.S. (1980 Supp.), authorizes counties to contract for services with municipalities and special districts as provided by s. 4, Art. VIII, State Const. (any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district). Section 126.0101(2) empowers the counties to contract with a municipality or special district within the county for, inter alia, waste and sewage collection and disposal services and facilities, and specifically provides that such services shall be funded as agreed upon between the county and the municipality or special district, except that the county may not impose any service charge or special assessment or levy any tax within the municipality or special district or create a municipal service taxing unit within such area. Also, s. 125.01(1)(p), F.S., enables a municipality to contract with a county for the joint performance, or the performance by one on behalf of the other, of any of either unit's authorized functions, including the provision of sewage collection, disposal and treatment facilities and services.
The Florida Interlocal Cooperation Act of 1969 (part I of ch. 163, F.S.) authorizes public agencies (including cities, counties and special districts) to exercise jointly with any other public agency any power or privilege which such agencies share in common and which each might exercise separately. Such interlocal agreements may provide for, among other things, the manner in which the participating agencies will provide financial support (s. 163.01(5)(d)); the method for equitably providing for and allocating and financing the capital and operating costs based on the amount of services rendered or benefits received (s.163.01(5)(f)); the fixing and collecting of charges, rates, rents or fees (s. 163.01(5)(h)); the method to be used to adjudicate disputes or disagreements, the effects of failure by a participant to pay its share, and the rights in such event of the other participants (s. 163.01(5)(p)); and any other necessary and proper matters (s. 163.01(5)(r)). A municipality, pursuant to an interlocal agreement, may not delegate or contract away the constitutional or statutory duties of its officers. See s.163.01(14), F.S.
Based on the foregoing statutory provisions, it is my opinion that municipalities possess the authority to provide assurance that any individual, corporate or governmental agency using a municipal sewage collection, disposal or treatment facility or service pay its or his proportionate share of the costs of that system or service.
THE AUTHORITY OF MUNICIPALITIES TO REFUSE TO RECEIVE WASTES FROM ANY CITY OR SUBDIVISION THEREOF, PUBLIC OR PRIVATE CORPORATION, OR PERSON:
As discussed in the preceding section, the exercise by a municipality of extraterritorial powers must be based upon some grant of statutory power. Pursuant to s. 180.19(1), F.S., a municipality may permit any other municipality or private property owners outside its corporate limits or within the limits of any other municipality to connect with or use its utilities (including sewage collection, disposal and treatment facilities) upon such terms and conditions as may be agreed upon between the contracting parties. This section would certainly permit a municipality to contractually provide for compliance with any reasonable condition as a precedent to the use of its sewage disposal and treatment facilities or services. In addition, the Florida Interlocal Cooperation Act of 1969 (part I of ch. 163, F.S.) authorizes municipalities, counties and special districts to exercise jointly any power or privilege which they share in common and which each might exercise separately and to enter into interlocal agreements providing for, inter alia, the duration of the agreement and the method by which it may be rescinded or terminated (s.163.01(5)(b)); the adjudication of disputes or disagreements (s.163.01(5)(p)); and any other necessary and proper matters agreed upon by the participants (s. 163.01(5)(r)). Thus, through the use of an interlocal agreement, a municipality could provide conditions precedent to use of its sewage collection, disposal and treatment facilities and services subject to the limitation of s.163.01(14), F.S.
Based on the foregoing statutory provisions, I am of the opinion that a municipality may make provision for and refuse to receive wastes from any individual, corporate or governmental user of municipal operated sewage collection, disposal and treatment facilities or services for failure to comply with any agreed-upon conditions.
THE AUTHORITY OF MUNICIPALITIES TO ACCEPT FOR TREATMENT INDUSTRIAL WASTES:
Section 184.03(1), F.S. 1971, preserved in force at the municipality's discretion by s. 166.042(1), F.S., expressly authorizes municipalities to construct, operate and maintain sewage disposal systems within or without, or partly within and without, their corporate limits. The term `sewage disposal system' is defined in s. 184.02(3), F.S. 1971, to include any plant, system, facility or property used in connection with the collection, treatment, purification, or disposal of sewage,including industrial wastes resulting from any processes of industry, manufacture, trade or business or from the development of any natural resources. Furthermore, s. 184.09(1)(d), F.S. 1971, empowers municipalities to either charge an industrial user of its facilities an additional charge for treating its wastes or to require such user to pretreat its wastes to make them compatible with the system.
The foregoing authorities are adequate, in my opinion, to demonstrate that municipalities have the power to accept and treat industrial wastes.
DEPARTMENT OF ENVIRONMENTAL REGULATION
The Department of Environmental Regulation (DER) was created by the Florida Legislature in 1975 `to promote the efficient, effective and economical operation of certain environmental agencies by centralizing authority over and pinpointing responsibility for the management of the environment . . . .' See
ss. 2, 4, ch. 75-22, Laws of Florida. As the primary state agency responsible for environmental regulation, DER has broad powers to enable it to carry out the responsibilities assigned it by law.
Relevant to the issues raised in your request are the provisions of s. 14, Art. VII, State Const., which empower the Legislature to authorize the issuance of state full faith and credit bonds without an approving election to finance the construction of air and water pollution control and abatement and solid waste disposal facilities which may be operated by any municipality, county, district or authority, or agency thereof, as well as by any agency of the state. The Legislature has implemented this constitutional provision and authorized the issuance of state bonds for the stated purposes. See s. 403.1834(1), F.S. With respect to the facilities constructed with the proceeds of these state bonds, DER has been assigned certain responsibilities and has been granted certain powers. See, e.g., s. 403.1834(4), requiring DER to determine and approve the facilities to be constructed with bond proceeds; s. 403.1834(4), permitting DER itself to construct, acquire, maintain and operate those facilities; s. 403.1834(5), authorizing DER and the Division of Bond Finance of the Department of General Services to enter into lease-purchase agreements between themselves or between themselves and any county, municipality, district, or authority, or any agency thereof, to carry out the purposes of s. 14, Art. VII, State Const.; and s.403.1834(6) which empowers DER to fix, establish and collect fees, rentals or other charges for the use or benefit of such facilities. Thus, it appears that DER does possess some limited authority with respect to the construction, operation and maintenance of water pollution control and abatement facilities financed and constructed in accordance with those constitutional and statutory provisions hereinabove cited. DER's authority is limited to those specific facilities, and the department has no authority of which I am aware with respect to the construction, operation, financing, maintenance or management of any other kind or type of sewage collection, disposal or treatment facility.
THE AUTHORITY OF DER TO MANAGE SEWAGE COLLECTION, DISPOSAL AND TREATMENT SYSTEMS AND RELATED FACILITIES:
DER is specifically authorized by s. 403.1834(4), F.S., to construct, acquire, maintain and operate those water pollution control and abatement facilities described in s. 14, Art. VII, State Const. With respect to those specific facilities and in the sense that the power to manage includes the power to operate and maintain, DER has that power.
THE AUTHORITY OF DER, EITHER DIRECTLY OR BY CONTRACT, TO DESIGN AND CONSTRUCT, OPERATE AND MAINTAIN, SEWAGE COLLECTION, DISPOSAL AND TREATMENT FACILITIES:
DER has the statutory authority to construct, operate and maintain those water pollution control and abatement facilities described in s. 14, Art. VII, State Const. See s. 403.1834(4), F.S.
THE AUTHORITY OF DER TO ACCEPT AND UTILIZE GRANTS OR OTHER FUNDS FROM ANY SOURCE FOR SEWAGE TREATMENT MANAGEMENT PURPOSES:
Section 403.1832, F.S., designates DER as the administrative agency of the state which may apply for and accept any funds or other aid which relate to the planning, development, maintenance and enforcement of the program to provide clean water and pollution abatement of waters of this state or other related purposes which the Congress of the United States has authorized or may authorize. Furthermore, the enumeration in s. 403.061 of the powers and duties of DER contains a provision that DER may accept state appropriations as well as loans and grants from the federal government and other sources and expend those monies for the purposes of Florida Air and Water Pollution Contral Act (part I of ch. 403, F.S.). See s. 403.061(5), F.S. Also, DER is among the governmental agencies authorized to expend the funds derived from the sale of bonds issued under the authority of s. 14, Art. VII, State Const., for the construction, acquisition, maintenance and operation of water pollution control and abatement facilities. See
ss. 403.1834(1) and (4), F.S.
Under the foregoing statutory provisions, DER has limited authority to apply for, accept and utilize federal and state funds for waste treatment purposes.
THE AUTHORITY OF DER TO RAISE REVENUES, INCLUDING THE ASSESSMENT OF SEWAGE TREATMENT CHARGES:
Section 1(a), Art. VII, State Const., states that no state ad valorem taxes shall be levied upon real estate or tangible personal property. Thus, as a state agency, DER has no power to levy ad valorem taxes and may only levy other taxes if authorized by law. See s. 1(a), Art. VII, supra. I am unaware of any law granting DER the power to levy any tax relating to sewage treatment. Section 403.1834(6), F.S., does grant DER the power to fix, establish, and collect fees, rentals or other charges for the use or benefit of water pollution control and abatement facilities financed and constructed in accordance with s. 14, Art. VII, State Const. In this limited sense, DER has the power to raise revenues for the use or benefit of certain water pollution control and abatement facilities.
THE AUTHORITY OF DER TO INCUR SHORT- AND LONG-TERM INDEBTEDNESS:
Other than the general authority found in s. 403.061(5), F.S., which empowers DER to accept loans for the purposes of the Florida Air and Water Pollution Control Act, DER possesses no authority whatever to incur either shortor long-term indebtedness or to make the same a charge against or a debt of the state.
THE AUTHORITY OF DER TO ASSURE IN THE IMPLEMENTATION OF AN AREAWIDE SEWAGE TREATMENT MANAGEMENT PLAN THAT EACH PARTICIPATING COMMUNITY PAY ITS PROPORTIONATE SHARE OF TREATMENT COSTS:
DER, as a public agency (see s. 163.01(3)(b), F.S., defining `public agency' as, among other things, an agency of the state), is empowered to exercise jointly with any county, municipality, special district or authority any power or privilege which such agencies share in common and which each might exercise separately (s. 163.01(4), F.S.), such joint exercise of power to be made by contract in the form of an interlocal agreement. But see s.163.01(14), F.S. Section 403.1834(4), F.S., provides that the department may construct, operate and maintain facilities to be financed with the proceeds of the state bonds authorized by s.403.1834(1), F.S. Thus, if mutually agreed upon, under an interlocal agreement DER could operate and maintain on behalf of the contracting parties an areawide waste treatment facility financed by the aforementioned state bonds. Section 163.01(5)(f), F.S., provides that the interlocal agreement itself may provide a method for equitably providing for and allocating and financing the capital and operating costs based on the amount of services rendered or benefits received or conferred or on any other equitable basis. Thus, DER could provide areawide sewage treatment facilities to be financed with the proceeds of state bonds issued under s. 403.1834(1), F.S., on behalf of contracting parties through an appropriate interlocal agreement and make provision in the agreement to assure that the contracting parties bear their proportionate share of treatment costs.
THE AUTHORITY OF DER TO REFUSE TO RECEIVE WASTES FROM ANY MUNICIPALITY OR SUBDIVISION THEREOF, PUBLIC OR PRIVATE CORPORATION OR PERSON:
DER does not have any express power to refuse to accept wastes from a municipality or subdivision thereof, or from a public or private corporation or person. If mutually agreed to by the contracting parties, DER could write such a provision into an interlocal agreement governing the provision of sewage treatment services pursuant to ss. 163.01(4), (5) and (6) for those facilities authorized by s. 403.1834(4), F.S. Such an agreement could specify that participation in any such areawide sewage disposal system or program is conditioned upon compliance by the contracting parties with the terms of the agreement.
THE AUTHORITY OF DER TO ACCEPT FOR TREATMENT INDUSTRIAL WASTES:
I have been unable to find any express statutory authority which would permit DER to accept industrial wastes for treatment. As I explained in the preceding sections, DER does have the authority to construct, operate and maintain water pollution control and abatement facilities financed by the proceeds of state bonds issued under s. 403.1834(1), F.S. The types and kinds of pollutants that such facilities may receive for treatment are not specified in the statute. Any valid interlocal agreements entered into concerning such facilities or operations could make provision for the acceptance of industrial wastes for treatment.
SPECIAL DISTRICTS
You have also asked that I comment on the authority of special districts with respect to sewage collection, disposal and treatment. The Legislature has the power, of course, to create special districts for specific, limited purposes pursuant to special law. Those special districts are limited to having only those powers expressly granted them by law or those powers which may necessarily be implied as essential to carry out some function assigned them by law. As these types of special districts are created by special act of the Legislature, however, you have not requested me to comment on their powers, but you have asked that I comment on the powers of both water management districts and soil and water conservation districts.
The Florida Water Resources Act of 1972, codified as part I of ch. 373, F.S., divides the state into 5 water management districts (s.373.069(1), F.S.) to aid in implementing the policy of that Act which is to conserve and control the waters in the state (s.373.016, F.S.). It appears to me from reading the Florida Water Resources Act that it is concerned, not so much with water quality and its pollution, but rather with water quantity and supply. I agree with the conclusions reached in your memorandum that, while water management districts do have extensive authority to manage water supply facilities, they do not have any authority with respect to sewage collection, disposal or treatment facilities.
The Legislature has provided a mechanism whereby private land owners may organize a soil and water conservation district in the area in which they live. Section 582.10, F.S. The district is constituted as a governmental subdivision of the state and has broad powers to combat flood damage and soil erosion. Section582.20, F.S. While it does have the power to accept and utilize grants and to incur indebtedness (ss. 582.20(5), (9), and (10), F.S.), those powers may only be exercised for the purposes for which the district was established — that is, to control flooding and soil erosion. Like water management districts, soil and water conservation districts have no powers which relate to sewage collection, disposal or treatment.
Prepared by: Percy W. Mallison, Jr., Assistant Attorney General