Mr. Lucien C. Proby, Jr. County Attorney Monroe County 500 Whitehead Street Key West, Florida 33040
Dear Mr. Proby:
This is in response to your request for an Attorney General's Opinion regarding substantially the following question:
 IS THE MONROE COUNTY MUNICIPAL SERVICE TAXING DISTRICT, WHICH PROVIDES GARBAGE DISPOSAL SERVICE IN THE UNINCORPORATED PORTIONS OF MONROE COUNTY, AUTHORIZED TO LEVY AN AD VALOREM TAX WHICH, WHEN ADDED TO THE COUNTY'S OTHER AD VALOREM TAX LEVIES, WOULD CREATE A TOTAL AD VALOREM LEVY WITHIN THE UNINCORPORATED AREAS OF THE COUNTY IN EXCESS OF TEN MILLS?
Your letter states that the Monroe County Municipal Service Taxing District was created by county ordinance for the purpose of providing garbage, trash, waste collection and disposal within the district or benefit unit. While the district currently operates solely within the unincorporated area of the county, the ordinance (ss. 8-43 and 8-50, Art. III, Monroe County Code) provides that any or all of the incorporated municipalities in the county may elect to participate in the municipal service taxing or benefit unit subject to the approval of the Monroe County Commission and by passage of an ordinance to that effect by the governing body of such municipality.
Chapter 165, F.S., the "Formation of Local Governments Act," sets forth the exclusive procedure pursuant to general law for the formation and dissolution of municipalities and special districts in this state except in those counties operating under a home rule charter which, pursuant to s. 6(e), Art. VIII, State Const., makes provision for such matters. See, s. 165.022(1), F.S. And see, AGO 84-23. See also, s. 165.031(5), F.S., which defines "special district" for purposes of Ch. 165 to mean a local unit of special government, except a district school board, created pursuant to general or special law for the purpose of performing prescribed, specialized functions, including municipal service functions, within limited boundaries; the term includes both dependent and independent special districts as those terms are defined in s.200.001(8)(d) and (e), F.S. Pursuant to s. 165.041(2), F.S., a dependent special district may be created by special act of the Legislature or by ordinance of a county or municipal governing body having jurisdiction over the area affected; an independent special district, however, may only be established pursuant to general law. See, s. 165.022(2), F.S. However, while Ch. 165, F.S., prescribes the exclusive procedure for forming and dissolving special districts, it does not confer on such districts the power to levy ad valorem taxes within the district. A special district, however created, is not by that fact alone, a special taxing district. See, AGO 84-24. Cf., AGO's 78-128 and 78-92 wherein this office stated that a municipality was not authorized by Ch. 165 to create a special taxing district for levying ad valorem taxes within the district.
Special districts possess constitutional authorization to levy ad valorem taxes and other types of taxes only if authorized to do so by law. See, s. 9(a), Art. VII, State Const., providing that special districts may "be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, . . . except ad valorem taxes on intangible personal property and taxes prohibited by this constitution." See also, s. 1(a), Art. VII, State Const., which states that "[n]o tax shall be levied except in pursuance of law." And see, s. 125.01(5)(c), F.S., which provides statutory authorization for a special district established by a county pursuant to this section to levy any millage designated in the ordinance creating such a special district or amendment thereto approved by a vote of the electors under the authority of the first sentence of s. 9(b), Art. VII, State Const., supra; and s. 125.01(1)(q), F.S., which authorizes a county to establish municipal service taxing or benefit units for part or all of the unincorporated parts of the county within which may be provided essential facilities and municipal services and provides that the paragraph is authorization for counties to levy additional taxes, within the ten mill limit fixed for municipal purposes within such municipal service taxing unit pursuant to the second sentence of s. 9(b), Art. VII, State Const.
Accordingly, the establishment of an independent special district by Monroe County must be provided for by general law. While the county may establish a dependent special district by ordinance, it may not, in the absence of statutory authorization, confer taxing powers on such district. It is not clear from your letter of inquiry under what authority the Monroe County Municipal Service Taxing District was created, although you generally refer to the provisions of s. 125.01, F.S. The ordinance creating the district incorporates elements of several provisions of s. 125.01, F.S., which makes a precise identification or characterization of the district difficult. Accordingly, my comments must be general in nature.
Section 9, Art. VII, State Const., provides in pertinent part that:
 (a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution.
 (b) Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of the electors who are the owners of freeholds therein not wholly exempt from taxation, shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; . . . and for all other special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes. (e.s.)
See also, Gallant v. Stephens, 358 So.2d 536 (Fla. 1978) (the last sentence of s. 9[b], Art. VII, State Const., provides express authority for statutes sanctioning taxing units as a method by which counties may tax to provide municipal services, within a ten mill limit, for "municipal purposes" without voter approval).
Section 125.01(1)(q), F.S., authorizes the governing body of a county, to the e xtent not inconsistent with general or special law, to
 [e]stablish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. It is declared to be the intent of the Legislature that this paragraph is the authorization for all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of s. 9(b), Art. VII of the State Constitution. (e.s.)
And see, AGO 85-83 stating that it is evident from s.125.01(1)(q), F.S., that the Legislature intended this paragraph to be the authorization for counties to levy additional taxes, within the boundaries of municipal service taxing units provided that such a tax is within the limits fixed for municipal purposes. See also, AGO's 84-52, 84-23.
In addition, s. 125.01(1)(r), F.S., states that a county may
 [l]evy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments; borrow and expend money; and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. There shall be no referendum required for the levy by a county of ad valorem taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit.
Thus, ss. 125.01(1)(q) and (r), supra, clearly authorize counties to establish municipal service taxing units or benefit districts within which may be provided municipal services and to levy, without voter approval, additional taxes within the limits fixed for municipal purposes. See, AGO 85-83. Cf., AGO 84-23; Gallant v. Stephens, supra, holding ss. 125.01(1)(q) and (r) constitutional; Tucker v. Underdown, 356 So.2d 251 (Fla. 1978); and Lake Howell Water and Reclamation District v. State, 268 So.2d 897, 899
(Fla. 1972) (nothing in the 1968 Constitution places special assessments for local improvements under the restrictions pertaining to ad valorem taxes).
In accordance with the provisions of s. 9, Art. VII, State Const., s. 200.071, F.S., establishes limitations on millage which may be levied against real property and tangible personal property by a county. Subsection (1) establishes a ten mill cap on such county ad valorem taxes except for voted levies and "[e]xcept as otherwise provided herein." And see, s. 9, Art. VII, State Const. An exception to this ten mill limit is provided in s. 200.071(3) which states that:
 In any county which, through a municipal service taxing unit covering a specific area of the county not within the boundaries of any municipality, provides services or facilities of the kind or type commonly provided by municipalities, there may be levied, in addition to the millages otherwise provided in this section, against real property and tangible personal property within each such municipal service taxing unit an additional ad valorem tax millage not in excess of 10 mills to pay for such services or facilities provided with the funds obtained through such levy within such municipal service taxing unit.
See also, s. 9(b), Art. VII, State Const. Thus, the provision for a ten mill ad valorem tax levy for municipal service taxing unit purposes in addition to the ten mill county ad valorem tax cap is an exception to the limit established by subsection (1) for all nonvoted levies. (See, s. 200.001[8][f], F.S., for a definition of "voted millage" or "voted levies" and AGO 85-9).
As can be determined from a reading of s. 125.01(1)(q), F.S., supra, municipal service taxing units may be established and subsequently merged or abolished "for any part or all of the unincorporated area of the county." Compare, ss. 8-43(b) and 8-50, Art. III, Monroe County Code, providing for the participation of unincorporated lands and municipalities in the municipal service taxing or benefit unit, with the requirement of s. 125.01(1)(q), supra, that municipal service taxing units consist solely of unincorporated areas of the county. Accordingly, it does not appear that a district created pursuant to county ordinance which provides for the inclusion of incorporated as well as unincorporated lands would qualify as a municipal service taxing unit which, pursuant to s. 125.01(1)(q), F.S., may consist only of unincorporated areas of the county.
Pursuant to s. 125.01(5)(a), F.S., a county is authorized to establish and subsequently merge or abolish special districts which include both incorporated and unincorporated areas of the county (subject to the approval of the governing body of the unincorporated area affected). Compare, s. 125.01(5)(a), supra, with ss. 8-43 and 8-50, Art. III, Monroe County Code. These special districts may provide municipal services and facilities from funds derived from service charges, special assessments or taxes within the district. See ss. 8-51 and 8-56, Art. III, Monroe County Code, regarding taxation, special assessments and service charges within the Monroe County Municipal Service District. As stated in s. 125.01(5)(c):
 It is declared to be the intent of the Legislature that this subsection is the authorization for the levy by a special district of any millage designated in the ordinance creating such a special district or amendment thereto and approved by vote of the electors under the authority of the first sentence of s. 9(b), Art. VII of the State Constitution. It is the further intent of the Legislature that a special district created under this subsection include both unincorporated and incorporated areas of a county and that such special district may not be used to provide services in the unincorporated area only. (e.s.)
And see, s. 125.01(5)(b), F.S., which provides that the governing body of such district shall be composed of county commissioners and may include elected officials of the governing body of any municipality within the boundaries of the special district with the basis of apportionment set forth in the ordinance creating said district. I would note, however, that according to the information you have submitted to this office, the Monroe County Municipal Service District currently provides services only in the unincorporated areas of the county.
While s. 125.01(5), F.S., does not define the term "special district," such a definition is contained in s. 200.001(8)(c), F.S., which states that a special district is a local unit of special government (excluding a district school board) which is created pursuant to general or special law to perform specialized functions within limited boundaries and includes municipal service taxing or benefit units. Section 200.001(8)(d) defines a "dependent special district" as follows:
 "Dependent special district" means a special district the governing head of which is the governing body of the county or a municipality, ex officio or otherwise, or the budget of which is established by such local government authority. Dependent special district millage, when added to the millage of the governing body to which it is dependent, shall not exceed the maximum millage applicable to such governing body.
And see, s. 200.001(8)(e), F.S., defining an "independent special district." See also, s. 165.031(5), F.S., defining "special district" as used in Ch. 165, F.S., to include dependent special districts as defined in s. 200.001(8)(d), and independent special districts, as defined in s. 200.001(8)(e), and incorporating those provisions into Ch. 165, F.S. Cf., s. 8-43, Art. III, Monroe County Code, designating the Board of County Commissioners of Monroe County as the governing body of the Monroe County Municipal Service District. See, AGO 85-9 concluding that a special district created pursuant to s. 125.01(5) is a dependent special district. As specifically provided in s. 200.001(8)(d), supra, the combined millage of a dependent special district and the governing body to which it is dependent shall not exceed the maximum millage applicable to the governing body. In the instant situation, s.200.071(1), F.S., limits nonvoted county ad valorem tax millage to ten mills and this cap would include any ad valorem tax millage levied by dependent special districts within the county. Accord, AGO's 85-9 (the millage of any dependent special district established pursuant to s. 125.01 must be included within the millage limitations established in s. 200.071 except as provided in s. 200.091); 71-331 (s. 200.071[1] treats a county and districts therein as one entity for the purpose of tax limitation).
Thus, it appears that a municipal service taxing unit established pursuant to s. 125.01(1)(q), F.S., is excepted from the limitation of nonvoted county ad valorem millage as provided in s. 200.071, F.S. See, s. 200.071(3), F.S., and s. 9(b), Art. VII, State Const. However, as noted in AGO 85-9, such an exception is not applicable to dependent special districts created pursuant to s. 125.01(5). Accordingly, the millage of a dependent special district created pursuant to s. 125.01(5), F.S., would be included in the county's millage and subject to the limitations provided in s. 200.071, F.S.
As discussed herein, the Monroe County Municipal Service Taxing District incorporates elements of both a s. 125.01(1)(q), F.S., district and a s. 125.01(5), F.S., district, thus preventing this office from determining under which statute the district was created. Further, I am not aware of any provision which would authorize Monroe County to create a special district combining the powers of a district created pursuant to s. 125.01(1)(q) and s.125.01(5). Cf., First National Bank of Key West v. Filer,145 So. 204, 207 (Fla. 1933); Alsop v. Pierce, 19 So.2d 799, 805-806
(Fla. 1944) (where the Legislature has prescribed the mode, that mode must be observed; when the controlling law directs how a thing shall be done that is, in effect, a prohibition against its being done in any other way). While the county may, pursuant to Ch. 165, F.S., create a dependent district by ordinance, such district is not a special taxing district and, in the absence of statutory authority, may not exercise such power.
Therefore, it is my opinion that a municipal service taxing or benefit unit established pursuant to s. 125.01(1)(q), F.S., which provides garbage, trash, waste collection and disposal services or facilities for and is limited to any part or all of the unincorporated area of Monroe County may levy, pursuant to s.200.071(3), F.S., in addition to the millages provided for Monroe County, an additional ad valorem tax millage not in excess of ten mills to pay for such services or facilities; however, the millage of a dependent special district created pursuant to s. 125.01(5), F.S., to provide such services, which includes both incorporated and unincorporated areas of the county must be included within the millage limitations established in s. 200.071, F.S., except as provided in s. 200.091, F.S. Finally, a county is not authorized to create a district combining the powers of a district created pursuant to ss. 125.01(1)(q) and 125.01(5), F.S.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General