358 So.2d 536 (1978)
William GALLANT, Appellant,
v.
Cliff STEPHENS, Don Jones, Jeanne Malchon, Charles E. Rainey, G. Patrick Iley, Merrett Stierheim, O. Sanford Jasper, Mac Haines, James T. Russell, Robert Shevin, and J. Ed Straughn, Appellees.
No. 48604.
Supreme Court of Florida.
January 26, 1978.
Rehearing Denied June 5, 1978.
*537 Jack F. White, Jr., Clearwater, and Joseph C. Jacobs of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellant.
Michael S. Davis, Chief Asst. City Atty., St. Petersburg, W. Gray Dunlap, County Atty. and Gerald A. Figurski, Asst. County Atty., Clearwater, and Robert L. Shevin, Atty. Gen. and Larry Levy, Asst. Atty. Gen., Tallahassee, for appellees.
Ralph A. Marsicano, Gen. Counsel, Tampa, and Burton M. Michaels, Staff Atty., Tallahassee, for Florida League of Cities, Inc., amicus curiae.
Robert L. Nabors, County Atty., Titusville, for Board of County Commissioners of Brevard County, amicus curiae.
Edward M. Jackson, Cocoa, and Joseph C. Jacobs, Richard W. Ervin and Robert J. Angerer of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for Gilbert A. Tucker, et ux; Deseret Ranches of Florida, Inc.; Sun Bank of Ocala, etc.; F.E. Sullivan, III, et al.; A. Duda & Sons, Inc., etc.; Carolyn R. Kempfer, et al.; and Roy Platt, etc., amicus curiae.
ENGLAND, Justice.
By direct appeal we are asked to review an order of the Pinellas County Circuit Court upholding the constitutionality of Sections 125.01(1)(q) and (1)(r), Florida Statutes (1975), which together authorize counties to create "municipal service taxing units" having the power to impose ad valorem taxes without voter approval. We *538 have jurisdiction under Article V, Section 3(b)(1) of the Florida Constitution.
Following a series of legislative attempts to deal with this subject,[1] Sections 125.01(1)(q) and (1)(r) were amended in 1975 to read:
"(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include ... the power to: ...
(q) Establish ... municipal service taxing or benefit units for any part or all of the unincorporated area of the county within which may be provided ... essential facilities and municipal services from funds derived from ... taxes within such unit only. It is hereby declared to be the intent of the Legislature that this paragraph is the authorization for all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of Art. VII, Section 9(b) of the state constitution.
(r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit... . There shall be no referendum required for the levy by a county of ad valorem taxes both for county purposes and for the providing of municipal services within any municipal service taxing unit."
Purportedly acting pursuant to this legislative authorization, the Board of County Commissioners of Pinellas County adopted a resolution creating a municipal service taxing unit, for a variety of services, coextensive with the entire unincorporated area of the county.[2] The Board designated itself the governing body of the taxing unit. Appellant, a taxpayer and property owner in the unincorporated area of Pinellas County, challenges the constitutionality of the resolution and enabling legislation.[3] His principal challenge is grounded in Article VII, Section 9 of the Florida Constitution (1975), which provides in relevant part:
"(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes... .
(b) Ad valorem taxes ... shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills; and for special districts a millage authorized by law approved by vote of the electors who are owners of freeholds therein not wholly exempt *539 from taxation. A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes."[4]
The principal issue before us is whether the Legislature has the power to authorize a county to furnish municipal-type services funded by ad valorem taxes, solely in its unincorporated area, without referendum, by creating a taxing unit comprising that geographical area. Other issues presented by the parties neither aid in the resolution of this important question, nor obviate the need to resolve it.[5]
The overall scheme of Article VII, Section 9 provides the starting point for our analysis. Entitled "Local taxes", that section provides certain local governmental units  counties, municipalities and school districts  with the authority to levy ad valorem taxes on real and tangible personal property[6] for county, municipal and school purposes up to a maximum of ten mills for each. It also authorizes "special districts" to tax for their districts to the extent of millage limits prescribed by the Legislature, with the approval of voters within the district. In addition, the last sentence of Section 9(b) expressly provides that a
"county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes."
Against this pattern of millage and referenda strictures on local ad valorem taxation, the parties urge diametrically opposite positions. Appellant argues that the characteristics of a constitutionally authorized "special district" are indistinguishable from Pinellas County's proposed municipal service taxing unit, but for the absence of voter approval, and that the resolution and its enabling legislation are in reality designed both to avoid the legislative necessity of setting a millage limitation and to circumvent the referendum requirement for special districts. Appellees argue that the two entities are fundamentally different, in that special districts are separate units of local government while municipal taxing units are, by virtue of the last sentence of Article VII, Section 9(b), mere methods by which counties can tax not only for the county services they provide, but also for identifiable municipal services they offer. To support their point, appellees suggest that if municipal service taxing units are equated with special districts then the last sentence of Section 9(b) is meaningless.
Disposition of these conflicting positions, and the resolution of this case, requires that we resolve three questions. The major one is whether the last sentence of Section 9(b) enables a county, without referendum, to levy a municipal service tax in addition to other county taxes on county residents in unincorporated areas, or whether it restricts additional county levies for services furnished only to municipalities.
In construing provisions of the Florida Constitution, we are obliged to ascertain and effectuate the intent of the framers and the people. State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1969); Gray v. Bryant, 125 So.2d 846 (Fla. 1960). Where possible, we are guided by circumstances leading to the adoption of a provision. In this case we have attempted to discern the rationale which led to the adoption of the last sentence in Article VII, Section 9(b). Its history in the 1966 Constitution Revision Commission and in the Florida *540 Legislature supports appellee's view of its import.
It is reasonably clear from the minutes and notes of the Commission, and from the reports of the Legislature, that the focus of the last sentence of Section 9(b) was the delivery of municipal-type services by counties to all county residents, rather than the more narrow delivery of services solely to residents of intra-county municipalities. In fact, a proposal to restrict the last sentence of Section 9(b) so that it would authorize additional taxation only to the extent a county furnished municipal services "in unincorporated areas" was defeated in the Legislature on the ground that it would prevent counties from offering municipal services as well within municipal boundaries.[7] No historical material contradictory to these indicators has been called to our attention.
Consistent with this apparent rationale for the last sentence of Section 9(b), the Legislature has fashioned Sections 125.01(1)(q) and (1)(r).[8] In matters of constitutional interpretation, the Legislature's view of its authority is highly persuasive.
"[W]here a constitutional provision may well have either of several meanings, it is a fundamental rule of constitutional construction that, if the Legislature has by statute adopted one, its action in this respect is well-nigh, if not completely, controlling."[9]
Both the historical and legislative interpretations are also consistent with our decision in State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1969), where we construed Section 9(b) to authorize a county-wide tax up to 20 mills for the combined municipal and county services offered by Dade County.[10] Indeed, our comments in that case may have precipitated passage of one feature of Section 125.01(1)(q). We there noted that the distinction between county and municipal purposes is an uncertain one, requiring immediate legislative attention. Section 125.01(1)(q), as enacted in 1971, expressly identified a non-exhaustive list of services which may be provided by municipal service taxing and benefit units.
For these reasons we conclude that the last sentence of Section 9(b) provides express authority for Sections 125.01(1)(q) and (1)(r), sanctioning taxing units as a method by which counties may tax to provide municipal services, within the 10 mill limit for "municipal purposes", without voter approval. Wholly independent of this county taxing power is the authority provided for "special districts" to meet the need for special purpose services in any geographical area which may (but need not) be within one county, under legislatively-set and voter-approved millage limitations.[11]
The second question to be answered in this litigation is whether the services offered by Pinellas County are in fact "municipal services". The trial court specifically found that the services proposed in the Pinellas County resolution do constitute municipal services, and that finding has not been challenged in this appeal.[12]
Finally, we need to inquire whether the county may offer these services solely in its unincorporated area. Section 125.01(1)(r) expressly so provides. The answer to this question, however, also calls into play another constitutional provision  Article VII, Section 2  which requires ad *541 valorem taxes to be imposed "at a uniform rate within each taxing unit". Appellant notes that Pinellas County has designated itself as the governing body of the taxing unit, and that its proposal for a tax solely within its unincorporated areas obviously would not be "uniform" within county boundaries since it would not fall on the residents of intra-county municipalities. Appellees counter this contention by viewing the uniformity clause as applying to the objects of taxation  the subjects within the unit actually being taxed  rather than to the taxing authority itself. They suggest that a tax for Pinellas County's municipal taxing service unit is uniform within the "taxing unit"  that is, the unincorporated area  and they support this view by reference to Article VIII, Section 1(h) of the Constitution and our decision in Alsdorf v. Broward County, 333 So.2d 457 (Fla. 1976). Together these authorities require a lower county-imposed tax rate in municipalities which receive no substantial benefit from the services provided by the tax revenue, thereby destroying uniformity within the county notwithstanding that the tax is "county" imposed.
Appellees' position is undoubtedly correct. Their view of the uniformity requirement in Article VII, Section 2 represents the only interpretation consistent with the whole Constitution. See Burnsed v. Seaboard Coastline Railroad, 290 So.2d 13 (Fla. 1974).
We hold, therefore, that Sections 125.01(1)(q) and (1)(r), Florida Statutes (1975), are constitutional, and that the Pinellas County Commission's resolution establishing a municipal service taxing unit in the unincorporated area of the county without voter approval is valid. The order of the Pinellas County Circuit Court is affirmed.
It is so ordered.
OVERTON, C.J., and ADKINS, BOYD, SUNDBERG, HATCHETT and KARL, JJ., concur.
NOTES
[1] As originally enacted in 1971, this legislation provided authority for counties to create "special purpose districts", without indicating whether referenda would be required. Ch. 71-14, § 1, Laws of Florida. The Attorney General later opined that Art. VII, § 9(b) of the Florida Constitution required a referendum. Ops.Att'y Gen.Fla. 072-162 and 073-178. In 1974 the Legislature amended these provisions by substituting "municipal service taxing or benefit units" for "special purpose districts". Ch. 74-191, § 1, Laws of Florida. Despite an expression of intent in the legislation to the effect that § 125.01(1)(q) was enacted to extend taxing power under the second sentence of Art. VII, § 9(b), the Attorney General later advised that these units must be evaluated on the basis of their functions, not title, and that referenda were nonetheless required in the absence of a statutory directive to the contrary. Op.Att'y Gen.Fla. 075-24. In 1975 the Legislature added the last sentence of present § 125.01(1)(r) to provide specifically that referenda were not required. Ch. 75-63, § 1, Laws of Florida.
[2] Services embraced within the taxing unit include road repair, fire protection, law enforcement, recreation, garbage collection and disposal, and sewage collection. Each of these services is specifically identified in § 125.01(1)(q) as a type of "municipal service".
[3] Opposing appellant's challenge are various Pinellas County officials, the Department of Revenue, the City of St. Petersburg, and the Florida League of Cities, Inc. Amicus briefs have also been filed by the parties in Tucker v. Underdown, 356 So.2d 251 (Fla. 1978), involving common issues.
[4] Although not relevant to this proceeding, we note that subsection 9(b) was amended in 1976 to authorize taxing powers for certain water management purposes. S.J.Res. 1061, Journal of the Senate (1975), approved by the voters of Florida on November 2, 1976.
[5] The only other issue which warrants discussion is appellant's contention that, under Art. VIII, § 1(f), Fla. Const., Pinellas County lacked the authority to create the municipal service taxing unit by "resolution" rather than by ordinance. This argument ignores § 125.01(1)(t), Fla. Stat. (1975), which implements Art. VIII, § 1(f) by authorizing a county to "[a]dopt ordinances and resolutions necessary for the exercise of its powers".
[6] The power to tax intangible personal property, which is not involved here, is available only to the state. Art. VII, §§ 1(a), 2 and 9(a), Fla. Const.
[7] These materials are found in the files of the Florida Supreme Court Library, entitled "Chronological Development of 1968 Constitution. Art. VII, § 9  Local Taxes."
[8] See also § 200.071(3), Fla. Stat. (1975).
[9] Greater Loretta Improvement Ass'n v. State ex rel. Boone, 234 So.2d 665, 669 (Fla. 1969).
[10] Of course, the Court limited to an aggregate of 10 mills the revenues to be derived from the delivery of municipal services by both the county and any municipalities within county boundaries.
[11] Statutes have defined special districts as local units of special government (excluding school districts) created by authority of general or special law for the purpose of performing specialized functions within limited boundaries. §§ 165.031(5) and 218.31(5), Fla. Stat. (1975).
[12] See note 2 above.