636 So.2d 39 (1994)
MADISON COUNTY, Florida, political subdivision of the state of Florida, and Wes Kelly, tax collector Madison County, Florida, Appellants,
v.
Wiley D. FOXX and Quinton Dryden, et al., Appellees.
No. 91-4119.
District Court of Appeal of Florida, First District.
February 9, 1994.
Rehearing Denied June 2, 1994.
*40 Edwin B. Browning, Jr. of Davis, Browning & Schnitker, P.A., Madison; Ken Van Assenderp, Tallahassee, for appellants Madison *41 County, FL and Wes Kelly, Tax Collector, Madison County, FL.
Robert I. Nabors, Sarah M. Bleakley and Thomas H. Duffy of Nabors, Giblin & Nickerson, P.A., Tallahassee, for appellees amici curiae Florida Ass'n of Counties, Inc. and Florida Ass'n of County Attys., Inc.
Robert H. Graddy and Toby Buel of Three Rivers Legal Services, Inc., Lake City, for appellee Wiley D. Foxx.
Larry E. Levy, Tallahassee, for appellee Quinton Dryden, et al.
Kathy N. Grunewald and Alice M. Vickers, Florida Legal Services, Inc., Tallahassee, for appellee amicus curiae Florida Legal Services, Inc.
SMITH, Judge.
Madison County appeals a final summary judgment invalidating its 1989 and 1990 ordinances levying special assessments for various services provided by the County, and ordering the County to refund monies paid by county residents. Wiley D. Foxx cross-appeals the trial court's dismissal with prejudice of count III of his amended complaint which sought recovery under 42 U.S.C. section 1983. We affirm in part, reverse in part, and remand for further proceedings.[1]
Madison County adopted four ordinances in 1989 purporting to levy special assessments[2] against property located within the county for garbage collection and disposal, landfill closure, ambulance service, and fire protection. The fire assessment was made effective in the unincorporated areas of the county only. The assessment for solid waste collection and disposal applied to property in the unincorporated area and within the municipality of Lee. The landfill assessment and the assessment for ambulance service was made applicable in the unincorporated areas of the county and within the county's three municipalities: Lee, Greenville, and the City of Madison.
Section 2 of each of the four ordinances imposed the special assessments pursuant to section 125.01(1)(q)2., Florida Statutes (1989). Each ordinance described the type of property to be subject to the assessment,[3] stated the rate of the assessment for each property class,[4] and provided for the collection of the assessment by the tax collector.[5] The ordinances contained the statement that these assessments provide a special benefit to the property charged.
Each ordinance detailed the manner in which a lien would be placed upon the property in the event of non-payment and stated that foreclosure could be pursued to enforce delinquent assessment liens. They afforded relief for indigents by providing that after an administrative determination of indigency, and during the pendency of indigency, the lien would not be enforced while the indigent and/or indigent spouse and/or indigent minor reside in the homestead as a residence.
On December 6, 1989, the County adopted a Resolution indicating its intent to collect the special assessments on the ad valorem tax bill, and invoking the statutory collection *42 method provided for in section 197.3632, Florida Statutes, and the related provisions of section 197.3635, Florida Statutes. The Resolution purported to fix the boundaries within which the charges are to be levied.[6]
The validity of the 1989 ordinances was challenged by two court proceedings: one for declaratory and injunctive relief filed by Wiley D. Foxx, a resident of the City of Madison; and the second, a class action suit on behalf of county residents filed by Quinton Dryden. The two cases were consolidated. In response to the suits, the County passed four new ordinances in 1990, amending the 1989 ordinances.[7] These 1990 ordinances, which with the exception of the fire ordinance employ virtually identical enabling language, exhibit the County's confusion regarding the statutory provisions under which the County was proceeding and the appropriate mechanism for levying special assessments.
At the outset, the three 1990 ordinances concerning garbage collection and disposal, landfill closure, and ambulance service, characterize the corresponding 1989 ordinances' reliance on section 125.01(1)(q)2.  the named enabling statute  as a "scrivener's error," and by means of these later ordinances attempt to correct the error by changing the referenced statute to "section 125.01(1)(q)1, Florida Statutes." Only the 1990 fire ordinance retains reliance on section 125.01(1)(q)2. as enabling legislation.
Because the County was uncertain whether imposition of these special assessments dealing with garbage collection and disposal, landfill closure, and ambulance service, required the creation of a Municipal Service Taxing Unit (MSTU), or a Municipal Service Benefits Unit (MSBU), or a special district,[8] or apparently whether the County had to contract with the cities to provide these services, the County claimed authority to act under Article VIII(1)(f) of the Florida Constitution, section 125.01(1), section 125.01(1)(q)1., section 125.01(5)(a), and section 125.0101(2).[9] For fire protection, the County claimed authority to act under Article VIII(1)(f) of the Florida Constitution, section 125.01(1), section 125.01(1)(q)2., and section 125.01(5)(a). None of these ordinances referenced section 125.01(1)(r), Florida Statutes.
Finally, the 1990 ordinances for garbage collection and disposal, landfill closure, and ambulance service require the affected cities to agree to the inclusion in the MSTU, MSBU, or district, and that "[a] certified copy of the Resolution agreeing to the inclusion must be received by the County prior to December 1, 1989, and shall be effective for 1989 and each subsequent year." The ordinances also mention measures to comply with section 125.01(5)(a).
In the meantime, on October 3, 1989, the City of Madison adopted a resolution concurring in the creation of a municipal service taxing or benefit unit within the city; however, the resolution by its terms was conditioned upon the concurrence and the creation of such unit by the other two cities  Greenville and Lee. On April 3, 1990, the City of Greenville adopted a similar resolution also conditioning its concurrence upon the concurrence of the other affected cities. The City of Lee never adopted a resolution concurring in the creation of a municipal service taxing or benefit unit or district.
Some, though not all, Madison County residents paid the special assessments. After *43 Foxx filed suit, he and the County entered into a consent decree in which it was agreed that he would not pay assessments until a court determination. The County agreed it would place a lien on his property for the unpaid assessments but would not execute on the lien.
Foxx and Dryden, et al., maintained that the ordinances were deficient because: (1) the County failed to comply with section 125.01(1)(q)2., requiring that special service units be established by April 1 of the effective year; (2) the County failed to comply with section 125.01(5)(a) by gaining the consent of the municipalities to the applicability of the ordinances within their territory; (3) the charges levied by the ordinances were not special assessments providing special benefits to the property charged, but were instead taxes for the general benefit of the public; (4) the levies were not reasonably proportioned between the properties affected; and (5) the levies violated Article VII § 6, and Article X § 4 of the Florida Constitution governing homestead exemptions. Appellees also requested a refund of all levies previously paid.
Foxx alleged a violation of his civil rights under 42 U.S.C. section 1983 in count III of his complaint. The trial court granted the County's motion to dismiss count III with prejudice, finding from an examination of Foxx's amended complaint that no deprivation of a federal right exists in this controversy, and that the amended complaint could not be amended to show such a deprivation.
Foxx and Dryden, et al., moved for summary judgment. In response to the motion, the County filed affidavits of an expert economist, a certified real estate appraiser, an accountant and county auditor, a government expert, and the chairman of the Board of County Commissioners of Madison County. These affidavits asserted the County's good faith in the adoption of the ordinances, the reasonable apportionment of the assessments, and that they provided a special benefit to the property.
At this juncture, we would point out that resolution of this appeal requires reference to pertinent Florida constitutional provisions, and the statutory criteria of Chapter 125.[10] For convenience, we relegate these provisions to "Appendix A," found at the end of this opinion.
Regarding the County's compliance with these provisions, the trial court made the following findings of fact, in pertinent part:
8. The MSTU or MSBU whose boundaries were set forth in the December 6, 1989 resolution adopted by Madison County never came into existence because it was never approved by all of the affected cities.
9. Madison County never complied with the provisions of Section 125.01(5), F.S., because approval of the governing bodies of all the affected incorporated areas, (the City of Greenville, the City of Madison, and the City of Lee), was never obtained. Only the City of Madison adopted a resolution prior to January 1, 1990, the City of Lee never adopted a resolution, and although the City of Greenville did adopt a resolution it was not timely in that it was not adopted until April 3, 1990, and both of the resolutions adopted by the two cities expressly provided that the approval was a conditional approval conditioned upon the approval of all affected cities.
10. Madison County did not comply with the provisions of Section 125.01(1)(q)2, F.S. (1987), by virtue of the fact that the required county and municipal ordinances and approval of the affected electorate was not completed and notice thereof given to the Property Appraiser at least 9 months prior to the beginning of the fiscal year for which such a unit is first established, and never complied with the statute because approval was never done by a majority of the electors of the municipality or the portion thereof affected for either the 1989 levies or the 1990 levies.
The trial court ruled, in essence, that the 1989 ordinances were invalid for failure to comply with section 125.01(1)(q)2., the statute *44 expressly named in the ordinances as the authority for their adoption. Similarly, the 1990 ordinances were invalid for failure to comply with any of the statutes referenced in them as providing authority for the special assessments. Pertinent to this ruling, the trial court made the following conclusions:
1. Section 125.01(1)(q)2, F.S. (1987), provided the authority for a county to establish by ordinance a municipal service taxing unit for any part or all of the unincorporated area of the county and any municipality within the county or any part thereof, within which may be provided fire control and rescue services from funds derived from service charges, special assessments or taxes within such unit only, subject to the conditions set forth in the statute that no municipality or portion thereof shall be included within such unit unless such inclusion is approved by ordinance of the municipality and by a majority of the electors of the municipality or the portion thereof affected, voting at a regular or special election. The statute further required as a condition prerequisite that all the required county or municipal ordinances and approval of the affected electors shall be completed at least 9 months prior to the beginning of the fiscal year for which such a unit is first established, and notice thereof given to the Property Appraiser. It is undisputed that none of the conditions set forth in this statute were complied with for the levies made pursuant to the 1989 or 1990 ordinances.
Furthermore, this statute only allowed such a municipal service taxing unit to be created for providing fire control and rescue services and the County ordinances for 1989 and 1990 authorized a levy for fire protection, ambulance service, garbage collection and disposal, and landfill closure. Assuming that the term "rescue services" as used in the statute includes ambulance services, two of the four ordinances provided for charges for services not authorized by the statute. Three of the County's 1989 ordinances as amended by the 1990 ordinances are clear that they are intended to apply not only in the unincorporated areas of the county but also within the cities. The ordinance for fire protection is the only ordinance that purports to levy a charge solely in the unincorporated area and it was levied in 1989 pursuant to Section 125.01(1)(q)2., F.S., instead of Section 125.01(1)(q)1., F.S.
This court finds and holds that since the County failed to comply with the provisions of Section 125.01(1)(q)2., F.S., that the ordinances are illegal, unauthorized, null and void.
It should be added that section 125.01(1)(q)1., upon which the County attempted to rely for three of its 1990 ordinances, is not applicable because by its express terms, it applies when the County is attempting to levy special assessments in the unincorporated areas only, whereas, in the three ordinances concerning garbage collection and disposal, landfill closure, and ambulance service which cited this statute as authority, the County was attempting to impose the special assessments in municipalities as well as unincorporated areas. The 1990 fire ordinance is the only one made applicable to unincorporated areas only, and that ordinance, rather than citing section 125.01(1)(q)1., which arguably was applicable, cited section 125.01(1)(q)2. as authority. As the trial court found, the County failed to comply with the provisions of section 125.01(1)(q)2.
Regarding the other challenges by the plaintiffs, the trial court ruled as a matter of law that the charges levied were not special assessments, but instead were taxes for the general benefit of the county, and therefore violated general law and the constitutional homestead provisions, Article VII § 6 and Article X § 4, which prohibit any levies other than special assessments to alter the homestead protection. The court added that the County's levies were nothing more than an annual charge made to defray the cost of a particular expense incurred by the county in providing a particular service, and no particular property is specially benefitted. The court commented that the levies were simply an attempt to circumvent the homestead tax exemption provided in the Constitution. The court granted the plaintiffs' motion for summary judgment entitling the plaintiffs to the *45 relief prayed for, including refund of all monies paid.

I.
The County argues on appeal,[11] as it did before the trial court, that even though the ordinances reference the wrong statutes, this is nothing more than harmless error. According to the County, Article VIII § 1(f) of the Florida Constitution and section 125.01(1)(r) give the County broad home rule power to impose special assessments county-wide (unincorporated and incorporated areas) unless the affected city or cities "opt out" by passing inconsistent legislation.
In response, appellee Dryden maintains that section 125.01(1)(r) does not grant a non-charter county the broad home rule authority to assess special assessments for furnishing municipal services within a municipality absent municipal consent. Dryden contends that when Chapter 125, and in particular section 125.01, was enacted in 1971 to implement county home rule authority, counties did not have authority to furnish municipal services beyond the unincorporated areas of the county; and further, that the present language of section 125.01(1)(q) was added to the statute in order to provide a means for a non-charter County to furnish municipal services in a city, but only if the city approved.
At this point, a brief review of the legislative history of section 125.01(1)(q) and (r) is helpful. As originally enacted in 1971, section 125.01(1)(q) and (r) provided:
125.01 Powers and duties. 
(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power shall include, but shall not be restricted to, the power to:
.....
(q) Establish, and subsequently merge or abolish those created hereunder, special purpose districts for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, and other essential facilities and services from funds derived from service charges, special assessments, or taxes within such district only.
(r) Levy and collect taxes and special assessments, borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law;
According to a synopsis of legislative history contained in Gallant v. Stephens, 358 So.2d 536, 538 n. 1 (Fla. 1978), section 125.01(1)(q) created "special purpose districts," without indicating whether referenda would be required. In several opinions, the attorney general found that Article VII § 9(b) of the Florida Constitution required a referendum. Ops.Att'y Gen.Fla. 072-162 and 073-178. The legislature responded in 1974 by amending section 125.01(1)(q) and (r), by substituting "municipal service taxing or benefit units" for "special purpose districts." In addition, the legislature added new subsections (5) and (6). Chap. 74-191, § 1 Laws of Florida. The changes, in part, were as follows:
(q) Establish, and subsequently merge or abolish those created hereunder, special purpose districts municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such district unit only. It is hereby declared to be the intent of the *46 Legislature that this paragraph is the authorization for all counties to levy additional taxes within the limits fixed for municipal purposes within such municipal service taxing units under the authority of the second sentence of Article VII, Section 9(b) of the state constitution.
(r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments, borrow and expend money, and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations as may be provided by general law.
125.01 Powers and duties.  (5)(a) To the extent not inconsistent with general or special law, the governing body of a county shall have the power to establish, and subsequently merge or abolish those created hereunder, special districts for any part or all of the county including incorporated areas if the governing body of the incorporated area affected approves such creation by ordinance within which may be provided municipal services and facilities from funds derived from service charges, special assessments, or taxes within such district only. Such ordinance may be subsequently amended by the same procedure as the original enactment... .
The preamble to Chapter 74-191 provides that these changes have the effect of "authorizing the governing body of any county to create municipal services and taxing units in the unincorporated areas and special purpose districts in both unincorporated and incorporated areas of the county under certain circumstances" and "authorizing the governing body of the county to levy ad valorem taxes within certain municipal service taxing and benefit units under certain circumstances... ."
Despite an expression of legislative intent in section 125.01(1)(q) to the effect that the legislation was enacted to extend taxing power under the second sentence of Article VII § 9(b), the Attorney General later opined that these units must be evaluated on the basis of their functions, not titles, and that referenda were nonetheless required in the absence of a statutory directive to the contrary. Op.Att'y Gen.Fla. 075-24. Gallant v. Stephens, 358 So.2d at 538. In 1975, the Legislature added the last sentence of the present section 125.01(1)(r) to provide specifically that referenda were not required. Chapter 75-63, § 1, Laws of Florida. Chapter 75-63 reveals the following express legislative intent:
WHEREAS, Chapter 74-191, Laws of Florida, intended to amend section 125.01(1)(q) and (r), Florida Statutes, to grant to all counties the home rule power flexibility to isolate the burden of ad valorem taxes levied for the furnishing of municipal services within the limits fixed for municipal purposes on those areas receiving the benefit of such municipal services, and
WHEREAS, the attorney general, in his opinion number 075-24, dated February 5, 1975, failed to recognize the constitutional distinction between a special district and a municipal service taxing unit created as a taxing vehicle to grant to all counties the taxing flexibility to levy ad valorem taxes within the limits fixed for municipal purposes for the furnishing of municipal services within those areas receiving the benefit of such municipal services and construed Chapter 74-191, Laws of Florida, to require a referendum of the electors within a municipal service taxing unit prior to the levy of ad valorem taxes for the municipal services furnished; and defeated the intent of the legislature in enacting Chapter 74-191, Laws of Florida, to provide home rule power for all counties to address and solve the controversy of double taxation between residents of the incorporated and unincorporated areas, and
WHEREAS, the legislature hereby affirms the will of the people in adopting the State Constitution of 1968 that ad valorem taxes shall not be levied in excess of 10 mills for county purposes and 10 mills for municipal purposes, and that property situate within municipalities shall not be subject to taxation for services rendered by the county exclusively for the benefit of the property or residents in unincorporated areas, and

*47 WHEREAS, the Legislature declares that the granting of the power to all counties to levy taxes within the unincorporated areas without a referendum for municipal services furnished is within the constitutional protection of such millage limitation; is within the constitutional power of all counties to levy ad valorem taxes; and is in recognition of the existing and potential inequality of placing the tax burden of municipal services furnished to residents in the unincorporated areas on all residents of a county... .
In 1987, paragraph q of subsection (1) of section 125.01 was amended to add sub-subparagraph 2. and 3. (See Appendix A, this opinion). According to the preamble of Chapter 87-263, the amendment authorized "counties to establish municipal services taxing units which include municipalities or portions thereof to provide fire control and rescue services," and authorized "the levy of charges, assessments, or taxes therein." The amendment also provided "procedures for removal of a municipality or a portion thereof from such unit... ."[12]
Dryden argues that to accept the County's argument that section 125.01(1)(r) grants to the County the authority to levy special assessments to provide municipal services in cities without municipal consent, absent the existence of an inconsistent municipal ordinance, means that the Legislature enacted a large quantity of needless, useless, and unnecessary legislation in enacting section 125.01(1)(q)1. and 2. and section 125.01(5), and that the requirements of these statutes become meaningless.
In the proceeding below, the trial court accepted Dryden's argument that the more specific statutes, section 125.01(1)(q)1. and 2. and section 125.01(5), were enacted subsequent to the more general statute, section 125.01(r), and that they control. Further, when the statutes are read in pari materia, section 125.01(1)(r) permits counties to levy special assessments subject to limitations provided in general law, and that the Legislature set forth such general law limitations in section 125.01(1)(q)1. and 2. and section 125.01(5).
In response, the County argues that the primary function of section 125.01(1)(q) is to provide for the creation of an MSTU funding mechanism to authorize counties to levy additional ad valorem taxes within the Florida Constitution's municipal-purposes millage limitation. Article VII § 9(b) of the Florida Constitution provides that in addition to the 10 mill county-purpose millage, counties may be authorized to levy ad valorem taxes for municipal purposes. The County contends that this municipal purpose millage authority for counties has been implemented by the Legislature through the adoption of section 125.01(1)(q), providing for the creation of municipal service taxing units by counties.
According to the County, MSTUs are funding mechanisms by which a county can provide a particular service from a levy of ad *48 valorem taxes, not county-wide but within all or a portion of the unincorporated areas, and with the adoption of the amendment in 1991, within any part of a municipality with municipal agreement. In short, MSTUs are tax equity tools available to counties to place the burden of ad valorem taxes upon a geographic area less than county-wide to fund a particular service.
The County is emphatic that section 125.01(1)(q)2. is not a restriction on the County's power to impose special assessments. The County urges this court to rule upon and reject the trial court's conclusion that section 125.01(1)(q)2. is the exclusive method counties may use to impose special assessments within municipalities. To reach this issue, the County requests this court to overlook the imprecise nomenclature of the ordinances and their mistaken reliance on inapplicable statutory provisions, and to rule that the County could impose the special assessments pursuant to section 125.01(1)(r).
We are unable to accept the County's proposed resolution of this controversy. We cannot overlook the fact that the County referenced section 125.01(1)(q) as the enabling legislation for its ordinances, or that the County totally failed to comply with the terms of that statute. As set forth by the trial court in its final judgment, quoted earlier in this opinion, the County's departure from the provisions of section 125.01(1)(q) cited in the ordinances was material and substantial. Failure to comply with the statute referenced in the ordinances as the authority therefor is critical. For special assessments to be valid and enforceable they must be made pursuant to legislative authority, and the method prescribed by the legislature must be substantially followed. City of Coral Gables v. Coral Gables, 119 Fla. 30, 160 So. 476, 478 (1935); see also 48 Fla.Jur.2d Special Assessments § 34 (1984) (whether the proceedings imposing the special assessment are under general statutory authority or are carried out pursuant to charter provision or other authorization, there must be substantial compliance with the terms of the authority).
For this reason, the County is incorrect that it does not matter that the County referenced the wrong statute in its ordinances. To uphold the validity of ordinances imposing special assessments based upon authority not cited in the ordinances, when the County totally failed to comply with the authority referenced in the ordinances, would undermine the requirements stated in the abovementioned authorities. The case of City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992), relied upon by the County, does not compel a different result. The statutes involved in City of Boca Raton, section 166.021, Florida Statutes and Chapter 170, contain markedly different language than section 125.01. More importantly, there appears to have been no issue in that case that the City of Boca Raton attempted to proceed under Chapter 170 to impose its special assessments, failed to comply with the requirements of Chapter 170, and then attempted to save its special assessments by declaring that it could levy the assessments under section 166.021.
Because of our conclusion that these ordinances imposing special assessments are null and void for failure of the County to substantially comply with the statutory authority under which it purported to act, we do not reach the further issue raised by the County, that is, whether section 125.01(1)(q)2. is the exclusive means by which the County may impose special assessments within municipalities, or whether section 125.01(1)(r) grants counties the broad home rule power to impose special assessments county-wide unless affected cities opt out by passing inconsistent legislation.[13]
We have briefly, but by no means exhaustively, outlined the legislative history of the pertinent provisions of section 125.01 to illustrate that this statute, and its legislative history, do not conclusively answer the question of the authority of counties to impose special assessments within municipalities, nor does the body of case law cited by *49 the parties.[14] That experienced lawyers, who have argued cases on the meaning of these statutes and the constitutional provisions for several years  one nearly a quarter of a century ago  argue so vehemently such divergent interpretations of these statutes, is testament to their confusing message and the need for legislative action. In that vein, it is fundamentally a legislative task to define intergovernmental relationships between cities and counties. We are aware that the legislature, in Chapter 91-238, Laws of Florida, substantially amended section 125.01(1)(q). However, since the amended version is not involved in the case before us, and the parties make no representation that the amendments resolve the questions presented by the earlier statutes, we decline to venture any interpretation of the amendment.

II.
Next, we address the trial court's conclusion that the charges levied by the County were not special assessments, but taxes for the general benefit of the County, and that, therefore, they violated general law and the constitutional homestead provisions which prohibit any levies, other than special assessments, to alter the homestead protection.
In City of Boca Raton v. State, supra, the Florida Supreme Court explained the two requirements for the imposition of a valid special assessment: (1) the property assessed must derive a special benefit from the service provided; and (2) the assessment must be fairly and reasonably apportioned among the properties that receive this special benefit. In the case before us, the court ruled that the special assessment did not meet the special benefit test; the court did not reach the fair apportionment test.
The County contends that the trial judge's determination that these ordinances did not confer a special benefit as a matter of law is clearly erroneous, pointing out that several other courts have held that special assessments for fire protection, garbage collection, erosion control, sewer improvements and street improvements constitute valid special assessments. Charlotte County v. Fiske, 350 So.2d 578 (Fla. 2d DCA 1977); Bodner v. City of Coral Gables, 245 So.2d 250 (Fla. 1971); City of Hallandale v. Meekins, 237 So.2d 318 (Fla. 4th DCA 1970), aff'd, 245 So.2d 253 (Fla. 1971); Fire Dist. No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla. 1969); and City of Treasure Island v. Strong, 215 So.2d 473 (Fla. 1968).
Appellees' dispute that the assessments in question provide special benefits to the assessed property. Dryden contends that they are some form of an attempted proprietary charge or service charge, and that they are an attempt to levy a tax in such manner as to circumvent the homestead tax exemptions provided for in the constitution, Article X § 4 and Article VII, § 6. Appellee Foxx goes further, arguing that the law of special assessments arose to provide a means for funding capital improvements and was never meant to permit a lien on homestead property for mere provision of services. Foxx urges us to rule that it is unconstitutional to allow a special assessment for mere services, and then to allow a lien to be placed against homestead property for failure to pay such assessment.
It is our view that the issue in this case  whether these alleged special assessments confer special benefits upon the property assessed  presents mixed questions of law and fact. See e.g. South Trail Fire Control Dist. Sarasota County v. State, 273 So.2d 380, 383 (Fla. 1973). Because this issue was, in part, a question of fact, and the pleadings, depositions on file, and the affidavits, do not demonstrate an absence of material issues of fact, the trial court's determination that these charges were not special assessments was premature. Regarding appellee Foxx's contention that special assessments may not be used to fund services, but only capital improvements, we note that a similar argument was considered and rejected by the court in Charlotte County v. Fiske, 350 So.2d 578, 580 (Fla. 2d DCA 1977). Moreover, we cannot *50 overlook the considerable Florida case law that has permitted the imposition of special assessments, even when no capital improvements were involved. See e.g. South Trail Fire Central Dist., Sarasota County v. State, 273 So.2d 380 (Fla. 1973); First Dist. No. 1 of Polk County v. Jenkins, 221 So.2d 740 (Fla. 1969).
In view of our holding that the ordinances imposing the special assessments are null and void, we decline to reach the further constitutional issue raised by appellee Foxx  that it is unconstitutional to take away a homestead from an indigent homesteader based upon foreclosure of a special assessment lien  because this issue is not ripe for our consideration.

III.
Turning to the trial court's order requiring a refund of the special assessment dollars paid by Madison County residents, the County contends that it acted in good faith, and that there will be a tremendous impact on the County Treasury if refunds are ordered. At the very least, the County argues that summary judgment was premature on this issue and asks that the cause be remanded for further proceedings.
Upon examination of the case law on the subject, Gulesian v. Dade County School Board, 281 So.2d 325 (Fla. 1973) and Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978), it is our view that many factual and legal issues remain to be considered before deciding the refund issue, and it was inappropriate for the trial court to determine this issue summarily as a matter of law. In addition to the issue of whether the County acted in good faith, there remain unanswered questions whether a refund is fiscally possible for Madison County, and whether the cost of processing such refunds would be prohibitive.

IV.
Finally, we address Foxx's claim that the trial court erred in dismissing his cause of action pursuant to 42 U.S.C. § 1983. Foxx states that the purpose of a section 1983 claim is to provide a vehicle to challenge excessive governmental action. Foxx contends that in its final judgment, the trial court found that there were violations of the Fifth and Fourteenth Amendments to the Federal Constitution,[15] and that this finding completely contradicts the trial court's order dismissing count III of Foxx's complaint on the grounds that there was no deprivation of a federal right in this controversy.
The County responds that while Foxx alleged in his complaint that the County threatened his use and enjoyment of his land and deprived him of his civil rights, he failed to allege how the County was presently interfering with his property or how his civil rights were being violated. The County contends that it has taken no action to place a lien or foreclose on Foxx's property. The County argues that the trial court's finding in the final judgment regarding federal constitutional violations of the Fifth and Fourteenth Amendments was wholly inappropriate and improper. The County further argues that it was entitled to rely on the court's earlier adjudication dismissing Foxx's civil rights claim. As the result of this reliance, the County offered no additional evidence in support of its position.
At the outset, it is necessary to observe that this issue requires resolution only because of Foxx's efforts to secure attorney's fees under the premise that even though this case has been decided on other grounds, if his section 1983 claim would have been an appropriate basis for relief, he would be entitled to an award of fees under the federal statute. Maher v. Gagne, 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980). Having already declared the ordinances imposing special assessments null and void for failure to comply with the enabling legislation referenced in the ordinances, this court would not ordinarily address a further issue regarding the sufficiency of the allegations stating another cause of *51 action. Nevertheless, we find it appropriate to do so in this case.
Upon review of Foxx's allegations of a federal civil rights violation, which we find unnecessary to detail in this opinion, we agree with the County that they were insufficient to state a cause of action. However, we are inclined to agree with Foxx that he should have been given an opportunity to amend his complaint. Dismissal of a complaint with prejudice is a severe sanction which should only be granted when the pleader has failed to state a cause of action and it conclusively appears that there is no possible way to amend the complaint in order to state a cause of action.
In so ruling, we express no opinion as to the appropriateness of a federal civil rights claim in these circumstances. Upon remand Foxx shall be given another opportunity to state his claim, if he can, at which point the trial court shall address Foxx's further claim for attorney's fees under 42 U.S.C. § 1988.
The summary final judgment is AFFIRMED in part, REVERSED in part, and the cause is REMANDED for further proceedings consistent with this opinion.
BOOTH and MINER, JJ., concur.

APPENDIX A
Article VII § 9(b), Florida Constitution (1968):
(b) Ad valorem taxes, ... shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; ... A county furnishing municipal services may, to the extent authorized by law, levy additional taxes within the limits fixed for municipal purposes.
Article VIII § 1(f), Florida Constitution (1968):
(f) NON-CHARTERED GOVERNMENT. Counties not operating under county charters shall have such power of self-government as is provided by general or special law. The board of county commissioners of a county not operating under a charter may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law, but an ordinance in conflict with a municipal ordinance shall not be effective within the municipality to the extent of such conflict.
Chapter 125.01 Powers and duties. 
(1) The legislative and governing body of a county shall have the power to carry on county government. To the extent not inconsistent with general or special law, this power includes, but is not restricted to, the power to: ...
(q)1. Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, indigent health care services, and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. It is declared to be the intent of the Legislature that this paragraph is the authorization for all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of s. 9(b), Art. VII of the State Constitution.
2. Establish by ordinance a municipal service taxing unit for any part or all of the unincorporated area of the county and any municipality within the county or any part thereof, within which may be provided fire control and rescue services from funds derived from service charges, special assessments, or taxes within such unit only. It is declared to be the intent of the Legislature that this subparagraph is the authorization for all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing unit under the authority of the second sentence of s. 9(b), Art. VII of the State Constitution. No municipality or *52 portion thereof shall be included within a municipal service taxing unit established pursuant to this subparagraph unless such inclusion is approved by ordinance of the municipality and by a majority of the electors of the municipality, or the portion thereof affected, voting at a regular or special election. Passage of the required county and municipal ordinances and approval of the affected electors shall be completed, and notice thereof given to the property appraiser, at least 9 months prior to the beginning of the fiscal year for which such a unit is first established. A municipality which is included within a municipal service taxing unit, or any portion of which is so included, may by ordinance remove itself or such portion from the unit. Such an ordinance must be adopted prior to April 1 of any year, to take effect no earlier than October 1 of the following calendar year. This subparagraph shall not be construed to prohibit a municipality from continuing in, or entering into, service contracts with a county or a municipal service taxing unit for the purpose of providing fire control and rescue services.
3. The total millage for municipal purposes imposed within a municipal service taxing unit shall not exceed 10 mills.
(r) Levy and collect taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit, and special assessments; borrow and expend money; and issue bonds, revenue certificates, and other obligations of indebtedness, which power shall be exercised in such manner, and subject to such limitations, as may be provided by general law. There shall be no referendum required for the levy by a county of ad valorem taxes, both for county purposes and for the providing of municipal services within any municipal service taxing unit.
.....
(3)(b) The provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section and to secure for the counties the broad exercise of home rule powers authorized by the State Constitution.
.....
(5)(a) To an extent not inconsistent with general or special law, the governing body of a county shall have the power to establish, and subsequently merge or abolish those created hereunder, special districts to include both incorporated and unincorporated areas subject to the approval of the governing body of the incorporated area affected, within which may be provided municipal services and facilities from funds derived from service charges, special assessments, or taxes within such district only... .
.....
(c) It is declared to be the intent of the Legislature that this subsection is the authorization for the levy by a special district of any millage designated in the ordinance creating such a special district or amendment thereto and approved by vote of the electors under the authority of the first sentence of s. 9(b), Art. VII of the State Constitution. It is the further intent of the Legislature that a special district created under this subsection include both unincorporated and incorporated areas of a county and that such special district may not be used to provide services in the unincorporated area only.
.....
125.0101 County may contract to provide services to municipalities and special districts. 
(2) In addition to the powers enumerated in this chapter, the legislative and governing body of a county shall have the power to contract with a municipality or special district within the county for fire protection, law enforcement, library services and facilities, beach erosion control, recreation services and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, and other essential facilities and municipal services. Such services shall be funded as agreed upon between the county and the municipality or special district.

*53 This section shall not be construed to authorize the county to impose any service charge or special assessment or to levy any tax within the municipality or special district, nor shall this section be construed to authorize the creation of a municipal service taxing unit within such area.
NOTES
[1] For organizational purposes, the adjudicatory portion of this opinion will be divided into subparts.
[2] As a matter of clarification, special assessments, or non ad-valorem assessments as they are called by section 197.3632, Florida Statutes, are assessments against property which are not based on millage and which can become a lien on the homestead pursuant to Article X § 4 of the Florida Constitution. § 197.3632(1)(d), Fla. Stat.
[3] Each assessment applied to homestead property. All improved residential, commercial and industrial property was liable for each of the assessments. The fire assessment was imposed against every parcel in the affected areas, including vacant property. Vacant property was exempt from the solid waste collection and disposal assessment, the emergency medical services/ambulance assessment, and the solid waste landfill assessment.
[4] Each ordinance contained the proviso: "The rates contained in this ordinance applicable to residents of the cities of Greenville, Lee, and Madison may not be changed by the Board of County Commissioners without the consent of the applicable city governing body."
[5] The uniform non-ad valorem assessment procedure to affix assessments on the ad valorem tax bill, set forth in section 197.3632, Florida Statutes (1989) was not available until the tax bill of 1990 and therefore the ordinances provided an alternative collection method  separate mailing of these special assessment bills.
[6] Though the 1989 ordinance levying the special assessment for fire protection was expressly applicable only in the unincorporated areas of a county, the Resolution provided for the collection and enforcement of this assessment for fire control from "each parcel of real estate situated in the unincorporated areas of Madison County, Florida, and the City of Lee, Florida." (Emphasis supplied).
[7] The validity of the 1990 ordinances was attacked in an amended complaint.
[8] According to an explanation offered by counsel for Amici Curiae, the distinction between a municipal service taxing unit and municipal service benefit unit is that a benefit unit is the correct terminology when the mechanism used to fund the county's services is derived through service charges or special assessments rather than taxes. A special district is a separate unit of government which may possess such powers as are authorized by law.
[9] We find the citation to section 125.0101(2) incomprehensible, since it plainly states that it does not provide authority to counties to impose special assessments.
[10] For our purposes, the provisions of Chapter 125 with which we are concerned are identical in the 1987 and 1989 Florida Statutes.
[11] In this opinion, references to the arguments of the County include and encompass the arguments advanced by Amici Curiae.
[12] Though admittedly not applicable to this appeal, paragraph (q) of subsection (1) of section 125.01, Florida Statutes, was again amended in 1991, deleting sub-subparagraphs 2. and 3. and providing that section 125.01(1)(q) shall now read:

(q)4. Establish, and subsequently merge or abolish those created hereunder, municipal service taxing or benefit units for any part or all of the unincorporated area of the county, within which may be provided fire protection, law enforcement, beach erosion control, recreation service and facilities, water, streets, sidewalks, street lighting, garbage and trash collection and disposal, waste and sewage collection and disposal, drainage, transportation, indigent health care services, mental health care services, and other essential facilities and municipal services from funds derived from service charges, special assessments, or taxes within such unit only. Subject to the consent by ordinance of the governing body of the affected municipality given either annually or for a term of years, the boundaries of a municipal service taxing or benefit unit may include all or part of the boundaries of a municipality in addition to all or part of the unincorporated areas. If ad valorem taxes are levied to provide essential facilities and municipal services within the unit, the millage levied on any parcel of property for municipal purposes by all municipal service taxing units and the municipality may not exceed 10 mills. It is declared to be the intent of the Legislature that This paragraph authorizes is the authorization for all counties to levy additional taxes, within the limits fixed for municipal purposes, within such municipal service taxing units under the authority of the second sentence of s. 9(b), Art. VII of the State Constitution.
Ch. 91-238, Laws of Florida.
[13] Because the County's argument places the onus upon cities to go to the expense of legislating in order to opt out of a county-wide assessment, rather than giving cities the sovereign right to opt-in, we do not think it is appropriate for this court to address this issue without argument on behalf of the affected cities.
[14] City of Boca Raton v. State, 595 So.2d 25 (Fla. 1992); Seminole County v. City of Casselberry, 541 So.2d 666 (Fla. 5th DCA 1989); City of Ormond Beach v. County of Volusia, 535 So.2d 302 (Fla. 5th DCA 1988); Taylor v. Lee County, 498 So.2d 424 (Fla. 1986); Gallant v. Stephens, 358 So.2d 536 (Fla. 1978); and State ex rel. Dade County v. Dickinson, 230 So.2d 130 (Fla. 1969).
[15] Generally, the exaction of an assessment of benefits against property which there was no power to impose is an unconstitutional taking of property without due process of law. 70A Am.Jur.2d Special Assessments § 11 (1987).